Marine National Exchange Bank of Milwaukee,
Executor, Appellant, v. Department of Taxation,
Respondent.

*November 28, 1960—January 10, 1961.*

For the appellant there was a brief and oral argument by *Walter A. John* of Milwaukee.

For the respondent the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the briefs were *John W. Reynolds,* attorney general, and *Harold H. Persons,* assistant attorney general.

CURRIE, J.   The brief of the appellant executor states the sole question on this appeal to be as follows:

"Is sec. 1 of art. VIII of the Wisconsin constitution violated when the state of Wisconsin taxes as income of a Wis-

consin resident the amount of a dividend *declared by,* instead of the amount *received from* a corporation of the Dominion of Canada or of the Union of South Africa, whose laws respectively provide that there shall be imposed and deducted at the source a tax of 15 per cent and 7.05 per cent on all dividends paid to nonresidents, when the Wisconsin resident never resided in such foreign country, was never employed and never carried on any business therein, and his only connection with either of such foreign countries is his ownership of certificates of stock of such corporation kept in his safe-deposit box in Wisconsin?"

Among other things, sec. 1, art. VIII of the Wisconsin constitution, authorizes the legislature to impose taxes on *"incomes."* Sec. 71.03 (1) (d), Wis. Stats., as applicable to the years 1952 through 1955, inclusive, is broad enough in scope to make the entire dividends declared on the shares of stock owned by the taxpayer in the Canadian and South African corporations includible in his gross income for Wisconsin income-tax purposes. There is no question but that the taxpayer actually only received the net amount of the dividends declared on such shares of stock after deduction at the source of the Canadian and South African income taxes imposed on the gross amount of such dividends. However, as counsel for the executor concedes, a constructive receipt of income by a resident taxpayer is sufficient to enable Wisconsin to tax such income. Therefore, the crucial issue on this appeal is whether the taxpayer had constructive receipt of those amounts of the dividends declared by the Canadian and South African corporations which were deducted to pay the income taxes imposed by Canada and the Union of South Africa. Unless such amounts of deducted taxes were so constructively received, they would not constitute *income* within the meaning of sec. 1, art. VIII, Wis. Const.

In general there are two categories of constructive receipt by a shareholder of corporate dividends. One type occurs where the stockholder has an unqualified right to receive on

demand a declared dividend but does not receive payment thereof. 2 Mertens, Law of Federal Income Taxation, p. 22, sec. 10.09. There was not such a constructive receipt by the taxpayer of those amounts of dividends withheld by the Canadian and South African corporations to pay income taxes. The governments of Canada and the Union of South Africa by their income tax statutes had made it impossible for the taxpayer to have an unqualified right to demand payment of that part of the dividends declared on his shares of stock which the corporations were required to withhold and pay to such governments.

The second type of constructive receipt of dividends occurs, as to a portion withheld from payment to the shareholder, where such withheld portion is disbursed for a purpose that benefits the shareholder. It is this type of constructive receipt with which the Massachusetts court was concerned in *Commissioner of Corporations and Taxation v. Williston* (1944), 315 Mass. 648, 651, 54 N. E. (2d) 43, 151 A. L. R. 1395, when it declared:

"A constructive receipt of income, we think, cannot be held to be the equivalent of an actual receipt, unless it can be seen that the taxpayer enjoys substantially the same material and objective benefits from the constructive receipt that he would enjoy if the income were paid directly to him or at least that he receives some economic or tangible advantage therefrom. The familiar example of such a constructive receipt is the application of the income or a part of it, with the consent of the taxpayer, by the person from whom it is due, to the discharge of some legal obligation owed by the taxpayer to a third person. [Citing cases.] The discharge of an indebtedness is an economic benefit to the taxpayer and the result to him is the same as if the income was paid to him and he expended it in payment of his indebtedness."

If there was a constructive receipt of the withheld dividends in the instant case it necessarily falls in this second

category exemplified in the afore-quoted statement by the Massachusetts court.

Counsel for the executor contends that the taxpayer received no economic benefit from those portions of the dividends withheld from him and paid over to the governments of Canada and the Union of South Africa in payment of income taxes levied by such governments upon such dividends. The thesis upon which such contention is grounded is that such foreign-imposed taxes on dividends constituted a tax on specific property and created no personal indebtedness against the taxpayer to pay the same. The reason advanced as to why no personal indebtedness existed is that such foreign governments lacked jurisdiction in a legislative sense to impose a personal tax on a nonresident who was neither a national of either Canada or the Union of South Africa nor domiciled therein.

The case of *Commissioner of Corporations and Taxation v. Thayer* (1943), 314 Mass. 375, 50 N. E. (2d) 11, supports the position of the executor. Such case held that there was no constructive receipt under the Massachusetts income statute by a shareholder in a Canadian corporation, who resided in Massachusetts, of those portions of dividends declared on taxpayer's stock in such corporation, which were withheld by the corporation and paid over to the Canadian government in payment of the Canadian income tax levied on such dividends. The Massachusetts income tax statute, Massachusetts G. L. (Ter. ed.), ch. 62, sec. 1, there before the court, imposed an income tax only upon dividends "received" by the taxpayer. The court determined that, in order for there to have been a constructive receipt of the portions of the dividends withheld and paid over to the Canadian government, it would be necessary that their payment to the Canadian government discharged a debt owing by the taxpayer. In holding that there existed no personal

indebtedness on the part of the taxpayer to pay the Canadian income tax imposed on the dividends in question, the court declared (314 Mass. 378) :

"But we do not think that this is the situation created by the Canadian [income tax] statute. No decision of the Canadian courts interpreting the statute has been brought to our attention. Nor has there been brought to our attention any statute of Canada that provides for collection of the tax in any manner other than by compelling the withholding of such a tax by the corporation paying a dividend and the payment of the amount so withheld to the Canadian government. Looking at the situation without such assistance, we conclude that the statute does not impose a personal obligation upon a nonresident stockholder. It is true that the statute purports to impose an income tax 'on all persons who are nonresidents of Canada in respect of' certain forms of income including 'dividends received from Canadian debtors.' It is hardly to be thought, however, that the Canadian government intended to exercise its taxing power upon nonresidents apart from the ownership of property in Canada. This would be contrary to the ordinary conception of jurisdiction to tax. See *Hart v. Tax Commissioner,* 240 Mass. 37, 40; *Shaffer v. Carter,* 252 U. S. 37, 57; Beale, Conflict of Laws, sec. 118A.3. It is a more-natural interpretation of the statute that it imposes a tax upon income derived from sources in Canada by a nonresident rather than upon a nonresident personally. And though the method of collection might not be inapplicable to a personal tax, it is particularly adapted to a tax imposed upon the income. If, as we think the statute is to be interpreted, the tax is imposed upon the income, the amount of the tax withheld is never received by the stockholder."

The New Hampshire court in the recent case of *Sagendorph v. Marvin* (1957), 101 N. H. 79, 133 Atl. (2d) 490, followed *Commissioner of Corporations and Taxation v. Thayer, supra,* in holding that there must be a discharge of a personal indebtedness in order to have a constructive receipt of income accruing out of the state withheld from resident

taxpayer and disbursed to other persons so as to subject such withheld income to the New Hampshire income tax statute. In that case the New Hampshire taxpayer was beneficiary of a trust which had its situs in Illinois and the withheld amounts were disbursed in payment of the trustee's fees and expenses and taxes levied by Illinois. The court determined there was no constructive receipt by the taxpayer of such deducted amounts.

It is of passing interest to note that the Massachusetts legislature, subsequent to the decision in *Commissioner of Corporations and Taxation v. Thayer, supra,* has amended its income tax statute in an apparent attempt to reverse the result of that case. Such amendment is to be found in Massachusetts G. L. (Ter. ed.), ch. 62, sec. 61 (a), which reads as follows:

"(a) Income shall be deemed to be received within the meaning of the term 'received,' as used in this chapter, even though the same is withheld from the person entitled thereto in payment of or to secure the payment of any tax imposed by the federal government or by any state or foreign government."

Attached to the stipulation of facts filed with the board, and which constitutes part of the instant record, are all the income tax statutes of Canada in force and effect during the years 1952 through 1955, inclusive. Ch. 52, statutes of 1948, and ch. 148 of the R. S. Canada, 1952, are the principal statutes. Part I, Division A, of both of these chapters imposes an income tax on residents of Canada and upon nonresidents employed in Canada or who carry on a business there.

Sec. 96 of Part II of ch. 52 and sec. 106 of Part III of ch. 148, R. S. Canada, both provide as follows:

"(1) Every nonresident person shall pay an income tax of 15 per cent on every amount that a person resident in Canada pays or credits, or is deemed by Part I to pay or

credit, to him as, on account or in lieu of payment of, or in satisfaction of,

"(a) a dividend other than . . ."

This is followed by exceptions not involved in the present case. We interpret the wording of the quoted portions of these Canadian statutes as clearly attempting to impose a personal liability upon the nonresident shareholder for dividend income derived from a Canadian corporation, such corporation being "a person resident in Canada" within the meaning of these statutes. Sec. 109 (1), ch. 148, and sec. 98 (1), ch. 152, R. S. Canada, are the same and require the Canadian corporation to deduct the income tax upon the dividends of the nonresident shareholder credited upon his shares and to remit the amount of the tax so deducted to the receiver general of Canada.

It is the contention of counsel for the executor that, although such Canadian income tax statutes purport to impose an income tax which the nonresident shareholder is personally liable to pay, it is in reality not such a tax but only one upon property, *i.e.*, the dividends declared while still in the possession of the Canadian corporation. This is because of the argument advanced, and previously noted herein, that Canada lacks the jurisdiction to impose a personal tax upon nonresident shareholders. This brings us to the question of whether one state, or nation, has jurisdiction in the legislative sense to impose a personal tax upon a nonresident owner of property located within its borders.

In *Dewey v. Des Moines* (1899), 173 U. S. 193, 19 Sup. Ct. 379, 43 L. Ed. 665, Dewey, a resident of Illinois, owned some lots in the city of Des Moines, Iowa. The city levied special assessments against such lots in connection with paving the street upon which the lots abutted. Under Iowa statutes, the landowner is made personally liable for the payment of such special assessments. The city issued special-

assessment certificates to the contractor who had performed the paving work. The Iowa trial and supreme courts held that the contractor was entitled to foreclose such certificates against the lots and obtain a personal judgment against Dewey for any deficiency. The United States supreme court reversed and declared (p. 203) :

"The jurisdiction to tax exists only in regard to persons and property or upon the business done within the state, and such jurisdiction cannot be enlarged by reason of a statute which assumes to make a nonresident personally liable to pay a tax of the nature of the one in question. All subjects over which the sovereign power of the state extends are objects of taxation. Cooley on Taxation (1st ed.), pp. 3, 4; Burroughs on Taxation, sec. 6. The power of the state to tax extends to all objects within the sovereignty of the state. (Per Mr. Justice CLIFFORD, in *Hamilton Co. v. Massachusetts,* 6 Wall. 632, at p. 638.) The power to tax is however limited to persons, property, and business within the state, and it cannot reach the person of a nonresident. *State Tax on Foreign-held Bonds,* 15 Wall. 300, 319. In Cooley on Taxation (1st ed.), p. 121, it is said that 'a state can no more subject to its power a single person or a single article of property whose residence or legal situs is in another state, than it can subject all the citizens or all the property of such other state to its power.' These are elementary propositions, but they are referred to only for the purpose of pointing out that *a statute imposing a personal liability upon a nonresident to pay such an assessment as this oversteps the sovereign power of a state."* (Emphasis supplied.)

The afore-quoted extract from the opinion in *Dewey v. Des Moines, supra,* is clearly open to the interpretation that Iowa lacked jurisdiction in the legislative sense to levy a tax imposing personal liability upon a nonresident property owner. Such holding would be equally applicable if the taxing government were some foreign power such as Canada. However, there are other statements in the opinion which seem to base the reversal on two other grounds, viz.: (1) That

Iowa lacked jurisdiction over the taxpayer, Dewey, to render a personal judgment and thus such judgment would violate the due-process clause of the Fourteenth amendment; and (2) the process of levying the special assessments violated such due-process clause. These two grounds would be entirely immaterial to resolving the instant appeal because Canada is not bound by the Fourteenth amendment. By dictum of Mr. Chief Justice FULLER in *Bristol v. Washington County* (1900), 177 U. S. 133, 146, 20 Sup. Ct. 585, 44 L. Ed. 701, it would appear that the court later considered the basis of its holding in *Dewey v. Des Moines, supra,* to be that "a citizen of one state cannot be cast in a personal judgment in another state on an assessment levied there on real estate for a local improvement, without service on him, or voluntary appearance, or some action on his part amounting to consent to the jurisdiction."

It is impossible to reconcile the holding in *Bristol v. Washington County, supra,* with the previously quoted extract from the opinion in *Dewey v. Des Moines, supra.* In the *Bristol Case,* one Sophia Bristol, who resided in the state of New York, had over a period of years loaned money on notes secured by mortgages to debtors residing in Washington county, Minnesota. Washington county levied a personal-property tax against such notes and mortgages which Sophia Bristol did not pay. She died testate in New York and her will was admitted to probate there. Ancillary probate was instituted in Ramsay county, Minnesota. Washington county then filed its claim for its unpaid personal-property taxes against the estate being probated in Ramsay county. The United States supreme court affirmed a holding of the Minnesota circuit court allowing such claim. The opinion found no violation of due process under the Fourteenth amendment in upholding the power of Minnesota to impose a tax which resulted in the creation of a personal indebtedness against the estate of the deceased nonresident taxpayer.

The principle that taxes may be satisfied from property of a nonresident taxpayer within the state, other than the property taxed, was reaffirmed in *Scottish Union & Nat. Ins. Co. v. Bowland* (1905), 196 U. S. 611, 25 Sup. Ct. 345, 49 L. Ed. 619, and *Nickey v. Mississippi* (1934), 292 U. S. 393, 54 Sup. Ct. 743, 78 L. Ed. 1323. In the *Scottish Union & Nat. Ins. Co. Case* the court, at page 633 of the opinion, expressly reserved deciding the question of personal liability of the nonresident taxpayer. However the result reached in these two cases, and in *Bristol v. Washington County, supra,* would appear to be untenable unless the taxes therein levied did create a personal liability against the nonresident taxpayers.

This is the conclusion reached by Strecker, "Nonresident's Liability for Taxes," 23 University of Cincinnati Law Review (1954), 135. In such article the author quotes from the following statement of the opinion in the *Nickey v. Mississippi Case* (p. 397), "As it is an incident of property that it may be made to respond to *obligations to which its owner may be subject,* no want of due process is involved in satisfying an obligation imposed upon the ownership of one item of property by resort to another which is subject to the same ownership." (Emphasis supplied.) And then makes this penetrating comment (p. 167) :

"It is hard to see how, on ordinary principles of legal reasoning, a claim which is *merely* against tract X can be satisfied out of tract Y unless there is some connecting factor beyond mere coincidence of ownership. In the usual case this connecting factor is a personal liability existing between the claimant and the common owner of the two items of property. If A owns an automobile and B has a security interest in that automobile without any personal claim against A, it could hardly be contended that B could go against *another* automobile belonging to A for the satisfaction of his security interest. Just the opposite is true if B does have a personal claim against A. Only in this latter case, that is, where the

claimant has a personal claim against the common owner, is the language above quoted applicable. Thus it appears by an inference justified on the basis of accepted legal principles that the supreme court has recognized the power of the state to create the personal liability."

An even-stronger precedent in support of the principle, that location of property in a state of a nonresident owner is sufficient to give such state the jurisdiction to levy a tax which will impose personal liability upon the owner, is *Corry v. Baltimore* (1905), 196 U. S. 466, 25 Sup. Ct. 297, 49 L. Ed. 556, decided the same day as the *Scottish Union & Nat. Ins. Co. Case.* In that case Maryland imposed a tax on the shares of all domestic corporations and required the corporation to pay the tax as agent for the shareowners. The corporation was given a lien on the stock and a right of action against the shareowners for reimbursement. Corry was a nonresident shareowner and he unsuccessfully sought to enjoin both the taxing authorities and the corporation from paying and collecting the tax. In disposing of the argument that Maryland lacked jurisdiction to levy a tax which would impose personal liability upon a nonresident shareowner, the United States supreme court stated (p. 475) :

"Reiterated in various forms of expression, the argument is this, that as the situs of the stock within the state was the sole source of the jurisdiction of the state to tax, the taxation must be confined to an assessment *in rem* against the stock, with a remedy for enforcement confined to the sale of the thing taxed, and hence without the right to compel the corporation to pay or to give it, when it did pay, a personal action against the owner.

"But these contentions are also in effect long since foreclosed by decisions of this court. *National Bank v. Commonwealth,* 9 Wall. 353; *Tappan v. Merchants' National Bank.* 19 Wall. 490."

In determining whether the Canadian income tax statutes before us on this appeal imposed a personal liability upon the

taxpayer shareowner, we deem the case of *Corry v. Baltimore, supra,* to be a sounder precedent to follow than *Commissioner of Corporations and Taxation v. Thayer, supra.* We cannot distinguish in principle between a tax laid on the shares owned by a nonresident in a corporation domiciled in the taxing state, or country, and an income tax laid upon the dividends declared upon such shares. If there is location of property in the taxing state, or country, sufficient to give jurisdiction to levy the former type of tax so as to impose personal liability, then this must be true with respect to an income tax levied upon the dividends payable to the nonresident shareowner. We, therefore, determine that the income tax, which was imposed by Canada upon the dividends payable to taxpayer upon the shares owned by him in the three Canadian corporations, did create a personal liability. Therefore, payment of such income taxes to the Canadian government by these three corporations discharged the personal indebtedness of the taxpayer and this resulted in a constructive receipt of the amount thereof by the taxpayer.

The pertinent income statutes of the Union of South Africa have not been made available to this court. The record is silent as to the nature of the income tax imposed by such government on the dividends payable to the taxpayer from O'Okiep Copper Company, Ltd. The total amount of additional income taxes due for the four-year period of 1952 through 1955, inclusive, on the portion of the dividends withheld from the taxpayer to pay the income tax imposed by the Union of South Africa is but $21.03. We leave undecided the question of whether the taxpayer or the department carries the burden in this litigation to establish the nature of such foreign-imposed tax. We prefer to apply the principle of *de minimis non curat lex* as to this $21.03 item.

A further question occurs to the court that is not raised or discussed in the briefs. It is this, Does not a nonresident taxpayer enjoy a benefit from the discharge of a tax levied

upon property of his located in another state, or foreign country, which tax imposes no personal liability upon him? Offhand, it would seem to us that he does receive such benefit, except in a situation when the amount of such tax equates or exceeds the value of the property taxed so that it would be to his advantage to abandon the property rather than pay the tax. However, we find it unnecessary to decide this question in this case, and, therefore, refrain from doing so.

*By the Court.*—Judgment affirmed.