THE FARMERS LOAN & TRUST COMPANY, EXECUTOR, *v.* MINNESOTA.

No. 26. Argued October 30, 1929.—Decided January 6, 1930.

See also 175 Minn. 310; *id.* 314.

*Mr. Cleon Headley*, with whom *Messrs. Frank B. Kellogg* and *George W. Morgan* were on the brief, for appellant.

*Mr. G. A. Youngquist,* Attorney General of Minnesota, with whom *Mr. John F. Bonner,* Assistant Attorney General, was on the brief, for appellee.

208

. Mr. Justice McReynolds delivered the opinion of the Court.

Henry R. Taylor, while domiciled and residing in New York, died testate, December 4, 1925. He had long owned and kept within that State negotiable bonds and certificates of indebtedness issued by the State of Minnesota and the Cities of Minneapolis and St. Paul, worth above $300,000. Some of these were registered, others were payable to bearer. None had any connection with business carried on by or for the decedent in Minnesota. All passed under his will which was probated in New York. There also his estate was administered and a tax exacted upon the testamentary transfer.

Minnesota assessed an inheritance tax upon the same transfer. Her Supreme Court approved this and upheld the validity of the authorizing statute. The executor—appellant—claims that, so construed and applied, that enactment conflicts with the Fourteenth Amendment.

When this cause first came before the Supreme Court of Minnesota it held negotiable public obligations were something more than mere evidences of debt and, like tangibles, taxable only at the place where found, regardless of the owner's domicile. It accordingly denied the power of that State to tax the testamentary transfer. After *Blodgett* v. *Silberman*, 277 U. S. 1, upon a rehearing, considering that cause along with *Blackstone* v. *Miller*, 188 U. S. 189, it felt obliged to treat the bonds and certificates like ordinary choses in action and to uphold the assessment.

Registration of certain of the bonds we regard as an immaterial circumstance. So did the court below. Counsel do not maintain otherwise.

Under *Blodgett* v. *Silberman* the obligations here involved were rightly regarded as if ordinary choses in action. The maxim *mobilia sequuntur personam* applied and gave them situs for taxation in New York—the owner's domicile. The testamentary transfer was properly taxed there. This is not controverted.

But it is said the obligations were debts of Minnesota and her corporations, subject to her control; that her laws gave them validity, protected them and provided means for enforcing payment. Accordingly, counsel argue that they had situs for taxation purposes in that State and maintain the validity of the challenged assessment.

*Blackstone* v. *Miller, supra,* and certain approving opinions, lend support to the doctrine that ordinarily choses in action are subject to taxation both at the debtor's domicile and at the domicile of the creditor; that two States may tax on different and more or less inconsistent principles the same testamentary transfer of such property without conflict with the Fourteenth Amendment. The inevitable tendency of that view is to disturb good relations among the States and produce the kind of discontent expected to subside after establishment of the Union. The Federalist, No. VII. The practical effect of it has been bad; perhaps two-thirds of the States have endeavored to avoid the evil by resort to reciprocal exemption laws. It has been stoutly assailed on principle. Having reconsidered the supporting arguments in the light of our more recent opinions, we are compelled to declare it untenable. *Blackstone* v. *Miller* no longer can be regarded as a correct exposition of existing law; and to prevent misunderstanding it is definitely overruled.

Four different views concerning the situs for taxation of negotiable public obligations have been advanced. One fixes this at the domicile of the owner; another at the debtor's domicile; a third at the place where the in-

struments are found—physically present; and the fourth within the jurisdiction where the owner has caused them to become integral parts of a localized business. If each State can adopt any one of these and tax accordingly, obviously, the same bonds may be declared present for taxation in two, or three, or four places at the same moment. Such a startling possibility suggests a wrong premise.

In this Court the presently approved doctrine is that no State may tax anything not within her jurisdiction without violating the Fourteenth Amendment. *State Tax on Foreign Held Bonds,* 15 Wall. 300; *Union Refrig. Transit Co.* v. *Kentucky,* 199 U. S. 194; *Safe Deposit & Trust Co.* v. *Virginia, ante,* p. 83. Also no State can tax the testamentary transfer of property wholly beyond her power, *Rhode Island Trust Co.* v. *Doughton,* 270 U. S. 69, or impose death duties reckoned upon the value of tangibles permanently located outside her limits. *Frick* v. *Pennsylvania,* 268 U. S. 473. These principles became definitely settled subsequent to *Blackstone* v. *Miller* and are out of harmony with the reasoning advanced to support the conclusion there announced.

At this time it cannot be assumed that tangible chattels permanently located within another State may be treated as part of the universal succession and taken into account when estimating the succession tax laid at the decedent's domicile. *Frick* v. *Pennsylvania* is to the contrary.

Nor is it permissible broadly to say that notwithstanding the Fourteenth Amendment two States have power to tax the same personalty on different and inconsistent principles or that a State always may tax according to the fiction that in successions after death *mobilia sequuntur personam* and domicile govern the whole. *Union Refrig. Transit Co.* v. *Kentucky, supra, Rhode Island Trust Co.* v. *Doughton, supra,* and *Safe Deposit & Trust Co.* v. *Virginia, supra,* stand in opposition.

*Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63, indicates plainly enough that the right of one State to tax may depend somewhat upon the power of another so to do. And *Coe* v. *Errol,* 116 U. S. 517, 524, though frequently cited to support the general affirmation that nothing in the Fourteenth Amendment prohibits double taxation, does not go so far. It affirmed the rather obvious proposition that the mere fact of taxation of tangibles by one State is not enough to exclude the right of another to tax them.

"If the owner of personal property within a State resides in another State which taxes him for that property as part of his general estate attached to his person, this action of the latter State does not in the least affect the right of the State in which the property is situated to tax it also. . . . The fact, therefore, that the owners of the logs in question were taxed for their value in Maine as a part of their general stock in trade, if such fact were proved, could have no influence in the decision of the case and may be laid out of view."

If Maine undertook to tax logs permanently located in another State, she transcended her legitimate powers. *Union Refrig. Transit Co.* v. *Kentucky, supra.* Of course, such action could not affect New Hampshire's rights in respect of property localized within her limits.

While debts have no actual territorial situs we have ruled that a State may properly apply the rule *mobilia sequuntur personam* and treat them as localized at the creditor's domicile for taxation purposes. Tangibles with permanent situs therein, and their testamentary transfer, may be taxed only by the State where they are found. And, we think, the general reasons declared sufficient to inhibit taxation of them by two States apply under present circumstances with no less force to intangibles with taxable situs imposed by due application of the legal fiction. Primitive conditions have passed; business is

now transacted on a national scale. A very large part of the country's wealth is invested in negotiable securities whose protection against discrimination, unjust and oppressive taxation, is matter of the greatest moment. Twenty-four years ago *Union Refrig. Transit Co.* v. *Kentucky, supra,* declared—" . . . in view of the enormous increase of such property [tangible personalty] since the introduction of railways and the growth of manufactures, the tendency has been in recent years to treat it as having a *situs* of its own for the purpose of taxation, and correlatively to exempt [it] at the domicile of the owner." And, certainly, existing conditions no less imperatively demand protection of choses in action against multiplied taxation whether following misapplication of some legal fiction or conflicting theories concerning the sovereign's right to exact contributions. For many years the trend of decisions here has been in that direction.

Taxation is an intensely practical matter and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences. We have determined that in general intangibles may be properly taxed at the domicile of their owner and we can find no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles. The difference between the two things, although obvious enough, seems insufficient to justify the harsh and oppressive discrimination against intangibles contended for on behalf of Minnesota.

*Railroad Company* v. *Pennsylvania*—" *State Tax on Foreign Held Bonds Case* "—15 Wall. 300, 320, distinctly held that the State was without power to tax the owner of bonds of a domestic railroad corporation made and payable outside her limits when issued to and held by citizens and residents of another State. Through Mr. Justice Field the Court there said—

" But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement."

If the situs of the bonds for taxation had been at the debtor's domicile—Pennsylvania—the challenged effort to tax could not have interfered unduly with the debtor's contract to pay interest.

*New Orleans* v. *Stempel,* 175 U. S. 309, *Bristol* v. *Washington County,* 177 U. S. 133, *Liverpool & L. & G. Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346, recognize the principle that choses in action may acquire a situs for taxation other than at the domicile of their owner if they have become integral parts of some local business. The present record gives no occasion for us to inquire whether such securities can be taxed a second time at the owner's domicile.

The bonds and certificates of the decedent had acquired permanent situs for taxation in New York; their testamentary transfer was properly taxable there but not in Minnesota.

The judgment appealed from must be reversed. The cause will be remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE STONE, concurring.

I concur in the result. Whether or not control over a debt at the domicile of the debtor gives jurisdiction to tax the debt; *Liverpool & L. & G. Ins. Co.* v. *Board of Assessors,* 221 U. S. 346, 354, we are not here concerned with a property tax, but with an excise or privilege tax imposed on the transfer of an intangible, see *Stebbins* v. *Riley,* 268 U. S. 137; *Saltonstall* v. *Saltonstall,* 276 U. S. 260, and to sustain a privilege tax the privilege must be enjoyed in the state imposing it. *Provident Savings Society* v. *Kentucky,* 239 U. S. 103. It is enough, I think, to uphold the present decision that the transfer was effected in New York by one domiciled there and is controlled by its law.

Even though the contract transferred was called into existence by the laws of Minnesota, its obligation cannot be constitutionally impaired or withdrawn from the protection which those laws gave it at its inception. See *Provident Savings Society* v. *Kentucky,* 239 U. S. 103, 113, 144; *Bedford* v. *Eastern Building & Loan Association,* 181 U. S. 227. And while the creditor may rely on Minnesota law to enforce the debt, that may be equally true of the law of any other state where the debtor or his property may be found. So far as the transfer, as distinguished from the contract itself, is concerned, it is New York law and not that of Minnesota which, by generally accepted rules, is applied there and receives recognition elsewhere. See *Bullen* v. *Wisconsin,* 240 U. S. 625, 631; *Russell* v. *Grigsby,* 168 Fed. 577; *Lee* v. *Abdy,* 17 Q. B. Div. 309; *Miller* v. *Campbell,* 140 N. Y. 457, 460; *Spencer* v. *Myers,* 150 N. Y. 269. Once the bonds had passed beyond the state and were acquired by an owner domiciled elsewhere, the law of Minnesota neither protected, nor could it withhold the power of transfer or prescribe its terms.

In the light of these considerations, granting that the continued existence of the contract rested in part on the law of Minnesota, the relation of that law to the transfer in New York, both in point of theory and in every practical aspect, appears to me to be too attenuated to constitute any reasonable basis for deeming the transfer to be within the taxing jurisdiction of Minnesota.

As the present is not a tax on the debt, but only on the transfer of it, neither the analogies drawn from the law of property taxes nor the attempt to solve the present problem by ascribing to a legal relationship unconnected with any physical thing, a fictitious *situs*, can, I think, carry us very far toward a solution. Nor does it seem that the invocation of the Fourteenth Amendment to relieve from the burdens of double taxation, as such, promises more.

Hitherto the fact that taxation is " double ". has not been deemed to affect its constitutionality and there are, I think, too many situations in which a single economic interest may have such legal relationships with different taxing jurisdictions as to justify its taxation in both, to admit of our laying down any constitutional principle broadly prohibiting taxation merely because it is double, at least until that characterization is more precisely defined. .

It seems to me to be unnecessary and undesirable to lay down any doctrine whose extent and content are so dubious. Whether it is far reaching enough to overturn those cases which, in circumstances differing somewhat from the present, have been regarded as permitting taxation in more than one state, reaching the same economic interest, is so uncertain as to suggest doubts of its trustworthiness and utility as a principle of judicial decision. See *Wheeler* v. *Sohmer*, 233 U. S. 434, and *Blodgett* v. *Silberman*, 277 U. S. 1; *Scottish Union & National*

*Ins. Co.* v. *Bowland,* 196 U. S. 611, 620; *Rogers* v. *Hennepin County,* 240 U. S. 184, 191; *New Orleans* v. *Stempel,* 175 U. S. 309; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395; *Bristol* v. *Washington County,* 177 U. S. 133; *Kirtland* v. *Hotchkiss,* 100 U. S. 491, and *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421; *Union Refrig. Transit Co.* v. *Kentucky,* 199 U. S. 194, 205; *Tappan* v. *Merchants National Bank,* 19 Wall. 490, 499; *Corry* v. *Baltimore,* 196 U. S. 466, and *Hawley* v. *Malden,* 232 U. S. 1, 12; *Blackstone* v. *Miller,* 188 U. S. 189 (so far as it relates to the transfer tax on a bank account in the state of the bank), and *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 58; *Bullen* v. *Wisconsin,* 240 U. S. 625, 631.

MR. JUSTICE HOLMES, dissenting.

This is a proceeding for the determination of a tax alleged to be due to the State of Minnesota but objected to by the appellant as contrary to the Fourteenth Amendment of the Constitution of the United States. The tax is imposed in respect of the transfer by will of bonds and certificates of indebtedness of the State of Minnesota and bonds of two cities of that State. The testator died domiciled in New York and the bonds were there at the time of his death. The Supreme Court of the State upheld the tax, *In re Estate of Taylor,* 176 Minn. 634, and the executor appeals.

It is not disputed that the transfer was taxable in New York, but there is no constitutional objection to the same transaction being taxed by two States, if the laws of both have to be invoked in order to give it effect. It may be assumed that the transfer considered by itself alone depends on the law of New York, but if the law of Minnesota is necessary to the existence of anything beyond a piece of paper to be transferred then Minnesota may demand payment for a privilege that could not exist without its help. It seems to me that the law of Minnesota is a

present force necessary to the existence of the obligation, and that therefore, however contrary it may be to enlightened policy, the tax is good.

No one would doubt that the law of Minnesota was necessary to call the obligation into existence. Other States do not attempt to determine the legal consequences of acts done outside of their jurisdiction, and therefore whether certain acts done in Minnesota constitute a contract or not depends on the law of Minnesota alone. I think the same thing is true of the continuance of the obligation to the present time. It seems to me that it is the law of Minnesota alone that keeps the debt alive. Obviously at the beginning that law could have provided that the debt should be extinguished by the death of the creditor or by such other event as that law might point out. It gave the debt its duration. The continued operation of that law keeps the debt alive. Not to go too far into the field of speculation but confining the discussion to cities of the State and the State itself, the continued existence of the cities and the readiness of the State to keep its promises depend upon the will of the State. If there were no Constitution the State might abolish the debt by its fiat. The only effect of the Constitution is that the law that originally gave the bonds continuance remains in force unchanged. But it is still the law of that State and no other. When such obligations are enforced by suit in another State it is on the footing of recognition, not of creation. *Deutsche Bank Filiale Nurnberg* v. *Humphrey,* 272 U. S. 517, 519. Another State, if it is civilized, does not undertake to say to the debtor now that we have caught you we will force an obligation upon you whether you still are bound by the law of your own State or not. I believe this to be the vital point. Unless I am wrong the debt, wherever enforced, is enforced only because it is recognized as such by the law that created it and keeps it still a debt. No doubt sometimes obligations are enforced elsewhere when

the statute of limitations has run at home. But such decisions when defencible stand on the ground that the limitation is only procedural and does not extinguish the duty. If the statute extinguishes the debt by lapse of time no foreign jurisdiction that intelligently understood its function would attempt to make the debtor pay.

I will not repeat what I said the other day in *Safe Deposit & Trust Co.* v. *Virginia, ante,* p. 83, concerning the attempt to draw conclusions from the supposed *situs* of a debt. The right to tax exists in this case because the party needs the help of Minnesota to acquire a right, and that State can demand a *quid pro quo* in return. *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63, 68. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 206.

I do not dwell on the practical necessity of resorting to the State in order to secure payment of state or municipal bonds. Even if the creditor had a complete and adequate remedy elsewhere, I still should think that a correct decision of the case must rest on whether I am right or not about the theoretical dependence of the continued existence of the bonds upon Minnesota law.

*Blackstone* v. *Miller,* 188 U. S. 189, supports my conclusions and I do not think that it should be overruled. A good deal has to be read into the Fourteenth Amendment to give it any bearing upon this case. The Amendment does not condemn everything that we may think undesirable on economic or social grounds.

Mr. Justice Brandeis agrees with this opinion.