THE FAJARDO SUGAR COMPANY OF PORTO RICO, Plaintiff and Appellee, *v.* RAFAEL SANCHO BONET, TREASURER, Defendant and Appellant.

No. 6716, 6717, 6718, 6719, 6726 and 6868. Argued March 3, 1936.— Decided June 12, 1936.

*B. Fernández García, Attorney General (Benjamin J. Horton and M. Rodríguez Serra on the brief) R. Cordovés Arana, Assistant Attorney General and Hernán Franco, Assistant Attorney General, for appellant. Jaime Sifre, Jr. and Horacio Franceschi, for appellee.*

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The same questions of law are involved in these appeals. The Fajardo Sugar Company of Puerto Rico paid under protest certain income taxes withheld at the source, which were levied and collected by the Treasurer of the Island for the years 1924, 1925, 1926, 1927, 1928, and 1929, and resorted to the District Court of San Juan requesting their return plus legal interest from the date the complaint was filed and the costs, in six separate suits. The Treasurer answered. The cases went to trial and all were decided for the plaintiff.

The defendant appealed and in a single brief for all of the appeals assigns the following errors:

"1. The District Court erred in holding, as a ground for the judgment, that the situs of the debt paid by the plaintiff to L. W. & P. Armstrong is in the city of New York.

"2. The court also erred in holding that although the interest on the debt was paid with the proceeds of the sale of sugar manufactured by the debtor in Puerto Rico, the transaction between the creditor and the debtor was made in New York and that the contract was consummated there when principal and interest was repaid in New York at the semiannual liquidation of the current account between the parties.

"3. The court also erred in holding that the question raised in this case is similar to that decided by the Circuit Court of Appeals for the First Circuit, affirming the judgment in the case of *Domenech* v. *United Porto Rico Sugar Company,* 62 Fed. (2d) 552, 556.

"4. The court also erred in holding that in the present case as in that of *Domenech* v. *United Porto Rican Sugar Company,* supra, the question is one of a tax on non resident corporations, by reason of the income made or which should have been made as a result of transactions entered into and totally executed or consummated outside the limits of Puerto Rico.

"5. The court also erred in weighing erroneously the evidence admitted at the trial and in rendering judgment for the plaintiff and ordering the return of the tax paid under protest in each case."

As may be seen from the very errors assigned, the question to be considered and decided is reduced to a determination of the true situs of the transaction giving rise to the income on which the tax was levied.

The plaintiff alleged in its complaints that it is a corporation organized in accordance with the laws of this island; that L. W. & P. Armstrong has been since 1924 a commercial partnership organized under the laws of the state of New York where it had and has its main office; that the said partnership has not now nor has it at any time had an office or agent in Puerto Rico; that the amounts received by the said partnership represent interest on advances made by it to the plaintiff in New York on a current account opened in the said city by virtue of an agreement made there; that the plaintiff, in accordance with the said agreement, sent sugar

to the partnership to be sold, as it was sold, the proceeds of the sale being credited to the plaintiff and the interest collected from the same; that the advances were never secured by any lien on real property located in Puerto Rico and the interest was not on bonds, promissory notes or other interest-bearing obligations.

The plaintiff also alleged in its complaints that the collection of the taxes was erroneous, arbitrary and illegal among other reasons:

"(c) Because the sum collected by L. W. & P. Armstrong as interest on a loan effected and consummated totally outside this island is a personal obligation whose situs for the purposes of taxation is at the domicile of the creditor.

"(d) Because the interest collected by L. W. & P. Armstrong is not interest on bonds, notes or other interest—bearing obligations.

"(d) Because the sum thus collected by L. W. & P. Armstrong as interest does not constitute income which is taxable by the Treasurer of Puerto Rico because such income was not derived from sources within Puerto Rico."

In his answers the defendant admitted some of the allegations of the complaints and denied others, alleging, as an additional defense in all of them:

"1. That the interest paid was derived from the use or exploitation of the capital invested by the tax-payer in Puerto Rico; that the capital on which the plaintiff has paid interest to L. W. & Armstrong, according to the complaint, is invested in Puerto Rico; that the source of said interest received by L. W. & Armstrong is Puerto Rico and therefore the interest paid is subject to the income tax withheld at the source."

The six cases were submitted on the same evidence, and the lower court in weighing the same said in its statement of the case and opinion:

"The evidence clearly shows that by virtue of the agreement mentioned above, made between the plaintiff, The Fajardo Sugar Co., and the firm L. W. & P. Armstrong of New York, the latter bought for the former, in the United States, machinery, bags and other articles which the plaintiff might need for its industry, articles and goods for

which L. W. & P. Armstrong paid the vendors in New York and charged them to the current account which the plaintiff had with said firm. The plaintiff sent its sugar to New York where it was sold by L. W. & P. Armstrong, which after deducting the freight and other expenses, credited the net proceeds of the sugar on its books to the account of the plaintiff. The account was liquidated semiannually, the principal and interest at 6% per annum being paid from the funds of the plaintiff in the possession of L. W. & P. Armstrong.

"It was also proved satisfactorily that the firm L. W. & P. Armstrong has not had an office and agent in the Island of Puerto Rico and that the credit in favor of L. W. & P. Armstrong was never secured by a mortgage or lien on real property located in Puerto Rico, and that the interest collected by the said firm was not interest on bonds, promissory notes or other interest-bearing obligations.

"Such facts show indubitably that this case involves a tax on a credit whose situs is outside the territorial limits of Puerto Rico and whose owner also resides outside the Island."

In discussing the evidence the defendant-appellant analyzes the agreement signed in New York and then another made on the same day in Puerto Rico by the same parties, wherein the partnership appeared represented by its attorney in fact, and by virtue of which the plaintiff bound itself to sell to the firm the entire sugar crop which it might produce, buy or otherwise acquire in Puerto Rico, the partnership obligating itself to supply ships for transportation, it being stipulated that the title should pass to the purchaser upon delivery of the sugar on board of any ship at the port of shipment, and then appellant states, in part:

"The Court will surely see that these contracts executed on the same day, of the same month and year simultaneously in Fajardo and in New York, are reality A SINGLE CONTRACT, for all purposes of this controversy . . . .

"The advances of money during and subsequent to the life of the contract (because stipulations were extended by common agreement), were not made by the firm L. W. & P. Armstrong as simple money lenders but as fiscal or financing agents of the sugar company, and with the guaranty of becoming acquirers and owners of the sugar crops. The money was to be used only for preparing and

producing sugar crops, that is to say, cane plantations, including those of colonos in a sufficient quantity.

"Those advances are invested with the essential characteristics of crop loans, except that they are not recorded in the Registry of Property.

"*           *           *           *           *           *           *

"Assuming that such transactions were a simple loan, it must be agreed that the sums loaned were not repaid in money, BUT IN SUGAR AND AT THE PORTS OF SHIPMENT IN PUERTO RICO. Therefore, it cannot be asserted that the loan contract was *"stipulated and consummated entirely in New York"* but on the contrary that the entire transaction was agreed upon simultaneously in New York and Puerto Rico; and as to the delivery of the sugar, and of the payment of the amounts advanced and interest, it was made in fact in specie, sugar, exclusively in *Puerto Rico.*

"*           *           *           *           *           *           *

"The *crediting* to the account of the Fajardo Sugar Co. of the amount which should be credited to it, *was the only part* of the contract which was carried out in New York; the formality, the pure formality of the entry in the books; but the fact, the delivery of the sugar, the employment and use of the sums advanced, for the purpose of raising the crops, the payment of the amounts owed was done in *Puerto Rico* upon delivery on board of the shipments of sugar.

"We admit that we are dealing with non-resident taxpayers, who have not and did not have an authorized agent in Puerto Rico to handle the payment of their obligations. (Although it was revealed that they did have an agent to sign the contract of January 21 in Fajardo and to inspect the shipments.) But this agents NEVER RECEIVED ANY SUM from the plaintiffs for the lending firm."

There is no doubt that the contract made in Puerto Rico is intimately connected with the one made in New York, nor is there any doubt that according to the stipulations of the contract dealing with the sale of the sugar the partnership acquired title to the sugar sold here in Puerto Rico, at the ports of shipment.

Nevertheless, those circumstances, although they give color to the case and explain the attitude of the defendant, are not sufficient to conclude that the situs of the loan made in New York which gave rise to the interest received by

the non-resident partnership, on which the taxes in question were levied and collected from the plaintiff, changed from New York to Puerto Rico.

"The place where interest is payable", it is stated is Holmes, Federal Taxes, Sixth Edition, p. 399, "is immaterial; the test is whether or not it is paid on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise."

Moreover, we are of the opinion that the question involved in these cases is one which has already been decided. Whatever efforts may be made it is impossible to distinguish them from that of *Gallardo* v. *United Porto Rican Sugar Co.*, 42 P.R.R. 624, in which this Supreme Court, following decisions of the Supreme Court of the United States, held that the debts of a corporation are not assets but obligations of the debtor which have value only in the hands of the creditor and therefore may be assessed for tax purposes only at the domicile of the latter. The judgment was appealed to the Circuit Court of Appeals for the First Circuit. In affirming it the said Court, through Justice Bingham, expressed itself as follows:

"The Supreme Court of Puerto Rico, in construing these acts, was of the opinion that 'the tax is imposed on the creditors or the credit'; it did not undertake to determine which. It held, however, that the tax was illegal whether imposed on the nonresident creditor or upon the credit—the debt. We think it is indisputable that the tax is imposed on the nonresident creditor and is one measured by the income or interest on the loan or loans for a given year; that it is not simply a tax on the credit or debt. The question then is whether the Legislature of Puerto Rico had jurisdiction and authority to levy an income tax upon nonresident creditor corporations which had no place of business in Puerto Rico and did no business there through agents or otherwise. The answer to the question is so self-evident that the mere statement of the proposition is its own answer. The Legislature of Puerto Rico is without authority or jurisdiction to impose a tax upon nonresident corporations measured by income earned or to be earned upon transactions entered into and wholly performed beyond the confines of Puerto Rico. It has no greater power in this respect than a state.

"But if it could be said that the acts in question did not impose a tax upon the nonresident creditors, but was one imposed upon the credit or debt, of which the interest is in fact a part, that debt or credit had no situs in Puerto Rico. Its situs was in Maryland, outside the jurisdiction of Puerto Rico, and the Legislature of Puerto Rico had no authoriy or jurisdiction over it and could not tax it. The debt was a mere chose in action or intangible personal property, the situs of which was in Maryland where the creditor corporations were organized and did business. The question of the taxable situs of a debt has been put to rest by the recent decision of the United States Supreme Court in *Farmers' Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 50 S. Ct. 98, 100, 74 L. Ed. 371, 65 A.L.R. 1000, in which the doctrine previously announced in *Blackstone* v. *Miller,* 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, was expressly overruled, and the holding in *Cleveland, P. & A. Railroad Company* v. *Pennsylvania State Tax on Foreign-Held Bonds,* 15 Wall. 300, 320, 21 L. Ed. 179, was reaffirmed. In speaking of that case, it was there said:

" '*Cleveland, P. & A. Railroad Co.* v. *Pennsylvania*—'State Tax on Foreign-Held Bonds Case''—15 Wall. 300, 320, 21 L. Ed. 179, distinctly held that the state was without power to tax the owner of bonds of a domestic railroad corporation made and payable outside her limits when issued to and held by citizen and resident of another state. Through Mr. Justice Field the Court there said:

" ' "But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors, is simply to misuse terms. All the property there can be in the nature of things, in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicil, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations in numerous adjudications; but no number of authorities and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement." ' "
Domenech, Treasurer, v. United Porto Rican Sugar Co., 62 Fed. (2d) 552, 555.

The judgments appealed from must be affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.