THE FAJARDO SUGAR COMPANY OF PORTO RICO, demandante y apelada, *v.* MANUEL V. DOMENECH, Tesorero de Puerto Rico, sustituído por RAFAEL SANCHO BONET, demandado y apelante.

Núms. 6716, 6717, 6718, 6719, 6726 y 6868.—*Sometidos:* Marzo 3, 1936. *Resueltos:* Junio 12, 1936.

*Hon. Procurador General B. Fernández García (Benjamín J. Horton y M. Rodríguez Serra en el alegato), R. Cordovés Arana, Procurador General Auxiliar y Hernán Franco, Subprocurador,* abogados del apelante; *Jaime Sifre, Jr. y Horacio Franceschi,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

En estos recursos están envueltas las mismas cuestiones de derecho. La Fajardo Sugar Company of Porto Rico pagó bajo protesta ciertas contribuciones sobre ingresos retenidas en su origen que para los años 1924, 1925, 1926, 1927, 1928 y 1929, le impuso y cobró el Tesorero de la Isla y acudió a la Corte de Distrito de San Juan demandando su devolución con más los intereses legales desde la interposición de la demanda y las costas, en seis pleitos separados. Contestó

el Tesorero. Fueron los pleitos a juicio y todos se fallaron en pro de la demandante.

Apeló el demandado y en un alegato común a todos los recursos, señala los siguientes errores:

"1.—La Corte de Distrito erró al sostener, como fundamento de la sentencia, que el *situs* de la deuda pagada por la demandante a L. W. & P. Armstrong radica en la ciudad de New York.

"2.—Erró también la corte al sostener que aunque los intereses de la deuda fuesen pagados con dinero procedente del precio del azúcar fabricado por la deudora en Puerto Rico, que la transacción del acreedor y del deudor se celebró en New York, y que allí se consumó el contrato cuando en New York se devolvió el capital del préstamo y sus intereses al liquidarse semestralmente la cuenta corriente entre las partes.

"3.—También erró la corte al declarar que la cuestión planteada en este caso es similar a la resuelta por la Corte de Circuito de Apelaciones para el Primer Circuito, que confirmó la del caso de *Domenech* v. *United Porto Rican Sugar Company*, 62 Fed. (2d) 552, 556.

"4.—También erró la corte al sostener que en el presente caso se trata como en el de Domenech v. United Porto Rican Sugar Company, supra, de imponer una contribución 'a corporaciones no residentes, por concepto del ingreso ganado o que debió ganarse a causa de transacciones celebradas y totalmente ejecutadas o consumadas fuera de los confines de Puerto Rico'.

"5.—Cometió error la corte al apreciar erróneamente las pruebas admitidas en el juicio y al dictar sentencia declarando con lugar las demandas y ordenando la devolución de la contribución pagada bajo protesta, en cada caso."

Como puede verse de los propios errores señalados, la cuestión a estudiar y resolver se reduce a determinar el verdadero *situs* de la transacción que dió origen a los ingresos sobre los cuales se impusieron las contribuciones.

La demandante alegó en sus demandas que es una corporación organizada de acuerdo con las leyes de esta Isla; que L. W. & P. Armstrong era desde 1924 y es una sociedad comercial organizada bajo las leyes del estado de Nueva York donde tenía y tiene su oficina principal; que dicha so-

ciedad ni ahora ni en tiempo alguno ha tenido oficina o agente en Puerto Rico; que las cantidades recibidas por dicha sociedad representan intereses sobre adelantos hechos por ella a la demandante en Nueva York en cuenta corriente abierta en dicha ciudad a virtud de un convenio allí formalizado; que la demandante de acuerdo con dicho convenio envió azúcares a la sociedad para que ésta los vendiera, como lo hizo, acreditándole el producto y cobrándose del mismo los intereses; que los adelantos nunca estuvieron garantizados con gravamen alguno sobre bienes inmuebles situados en Puerto Rico y los intereses no lo eran sobre bonos, pagarés u otras obligaciones que devenguen interés.

Alegó además la demandante en sus demandas que el cobro de las contribuciones era erróneo, arbitrario e ilegal entre otros motivos,

"(c) Porque la suma cobrada por L. W. & P. Armstrong por concepto de intereses sobre un préstamo efectuado y consumado en su totalidad fuera de esta Isla es una obligación personal cuyo 'situs' a los efectos de la tributación es el del domicilio del acreedor.

"(d) Porque los intereses cobrados por L. W. & P. Armstrong no son intereses sobre bonos, pagarés u otras obligaciones que devenguen intereses (interest-bearing obligations).

"(e) Porque la suma así cobrada por L. W. & P. Armstrong por concepto de intereses no constituye ingreso tributable por el Tesorero de Puerto Rico porque tales ingresos no fueron derivados de fuentes radicadas dentro de Puerto Rico."

En sus contestaciones el demandado admitió algunas alegaciones de las demandas y negó otras, alegando como defensa adicional en todas:

"1.—Que los intereses pagados proceden del uso o aprovechamiento del capital invertido por la contribuyente en Puerto Rico; que el capital por el cual la demandante ha pagado los intereses a L. W. & P. Armstrong, según alega en la demanda, está invertido en Puerto Rico; que la fuente de esos intereses recibidos por L. W. & P. Armstrong es Puerto Rico y por tanto los intereses pagados están sujetos a la contribución sobre ingresos retenida en el origen."

Sometidos los seis casos por la misma evidencia, apreciando ésta dijo la corte sentenciadora en su relación del caso y opinión.

"La prueba claramente demuestra que en virtud del convenio de que antes se ha hecho mención, celebrado entre la demandante, The Fajardo Sugar Co., y la firma L. W. & P. Armstrong de New York, la segunda compraba para la primera en los Estados Unidos, maquinarias, sacos y otros artículos que pudiese necesitar la demandante para su industria, artículos y efectos que eran pagados en New York por L. W. & P. Armstrong a los vendedores y cargados a la cuenta corriente que con esta firma tenía la demandante. La demandante enviaba sus azúcares a New York y allí se vendían por L. W. & P. Armstrong, la cual después de deducir los fletes y demás gastos, acreditaba en sus libros el producto neto del azúcar a la cuenta de la demandante. Semestralmente se liquidaba la cuenta, pagándose, desde luego, capital e intereses a razón de 6% anual con los fondos que en poder de L. W. & P. Armstrong tuviese la demandante.

"También quedó probado satisfactoriamente que la firma L. W. & P. Armstrong no ha tenido oficina ni agente en la Isla de Puerto Rico y que el crédito a favor de L. W. & P. Armstrong nunca estuvo garantizado con hipoteca ni con gravamen real sobre inmuebles radicados en Puerto Rico y que los intereses cobrados por dicha firma no eran intereses sobre bonos, pagarés y otras obligaciones que devenguen interés.

"Tales hechos indudablemente demuestran que se trata en este caso de una contribución impuesta sobre un crédito cuyo *situs* radica fuera de los límites territoriales de Puerto Rico y cuyo dueño reside también fuera de esta Isla."

Al discutir la evidencia el demandado apelante analiza el convenio suscrito en Nueva York y luego otro celebrado el mismo día en Puerto Rico por las mismas partes en el que la sociedad compareció representada por su apoderado y por virtud del cual la demandante se comprometió a venderle la cosecha total de azúcares que produjera, comprara o de otro modo adquiriera en Puerto Rico, obligándose la sociedad a proporcionar buques para el transporte, quedando estipulado que el título pasaría al comprador al ser entregado

el azúcar y puesto a bordo de cualquier buque en el puerto de embarque, y luego, en parte, dice:

"La Corte seguramente verá que estos contratos otorgados el mismo día, del mismo mes y año, simultáneamente en Fajardo y en New York, *son* en realidad UN SOLO CONTRATO, para todos los efectos de esta controversia.     .     .     .     .     .     .     .

"Los adelantos de dinero durante la vida del contrato y con posterioridad, (por haberse prorrogado de común acuerdo las estipulaciones), no fueron hechos por la firma L. W. & P. Armstrong como simples prestamistas, sino como agentes fiscales o financieros de la compañía azucarera, y con las garantías de convertirse en adquirentes y dueños de las cosechas de azúcar.   El dinero solamente se emplearía en preparar y fomentar cosechas de azúcar, es decir, plantaciones de caña, de colonos, inclusive, en cantidad suficiente.

"Esos adelantos revisten las características esenciales de los préstamos refaccionarios, salvo la de la inscripción en el Registro de la Propiedad.

.     .     .     .     .     .     .     .     .

.     .     .     .     .     .     .     .     .

"Asumiendo que tales transacciones eran de simple préstamo, fuerza es convenir en que las sumas prestadas no eran devueltas en dinero, SINO EN AZÚCAR, Y EN LOS PUERTOS DE EMBARQUE EN PUERTO RICO.   Luego, no cabe afirmar que el contrato de préstamo fué *"estipulado y consumado enteramente en New York'*, sino que toda esa transacción completa se estipuló simultáneamente en New York y en Puerto Rico; y en cuanto a la entrega de los azúcares, en cuanto al pago de las cantidades adelantadas e intereses, verificábase, de hecho, en especie, azúcar, exclusivamente en *Puerto Rico*.

.     .     .     .     .     .     .     .

"El *acreditar* en la cuenta a la Fajardo Sugar Co. las sumas que debía acreditársele, *eso sólo* era lo que del contrato se realizaba en New York; lo formal, la pura formalidad del asiento en los libros; pero el hecho, la entrega de los azúcares, el empleo y uso de las sumas adelantadas, para levantar las cosechas, el pago de las cantidades adeudadas se verificaba en *Puerto Rico* al entregarse a bordo los cargamentos de azúcar.

"Admitimos que se trata de contribuyentes extranjeros no residentes, que no tienen ni tenían un agente autorizado en Puerto Rico para verificar el pago de sus obligaciones.   (Aunque se reveló que

tenían un agente para firmar el contrato de 21 de enero en Fajardo y para inspeccionar los embarques.) Pero este agente NO RECIBIÓ JAMÁS SUMA.ALGUNA de los demandantes para la firma prestamista.''

Es indudable que el contrato celebrado en Puerto Rico está íntimamente relacionado con el celebrado en Nueva York y no hay duda tampoco de que de acuerdo con lo estipulado en el contrato sobre venta de azúcares la sociedad adquiría aquí mismo en Puerto Rico en los puertos de embarque la propiedad de los azúcares vendídosle.

Sin embargo, esas circunstancias aunque dan color al caso y explican la actitud del demandado, no son suficientes para concluir que el ''situs'' del préstamo realizado en Nueva York que dió origen a los intereses percibidos por la sociedad no residente sobre los cuales se cobraron a la demandante las contribuciones de que se trata, cambió de Nueva York a Puerto Rico.

''El lugar donde el interés se paga'', se dice en Holmes Federal Taxes, Sixth Edition, pág. 399, ''carece de importancia; la cuestión a determinar es si se paga o no sobre bonos, pagarés u otras obligaciones de residentes que devengan intereses, ya fueren corporaciones o de otra índole.''

Además, creemos que la envuelta en estos casos es una cuestión resuelta. Por más esfuerzos que se hagan no es posible distinguirlos del de *Gallardo, Tesorero,* v. *United Porto Rican Sugar Company,* 42 D.P.R. 646, en el que esta Corte Suprema siguiendo jurisprudencia establecida por la Corte Suprema de los Estados Unidos decidió que las deudas de una corporación no son bienes sino obligaciones del deudor que sólo tienen valor en manos del acreedor y que por tanto sólo pueden tasarse a los efectos contributivos en el domicilio de éste. La sentencia fué apelada para ante la Corte de Circuito de Apelaciones del Primer Circuito. Al confirmarla, dicha corte, por medio del Juez Sr. Bingham, se expresó así:

''La Corte Suprema de Puerto Rico al interpretar estas leyes fué del criterio que 'la contribución se impone a los acreedores o al

crédito'; no trató de determinar a cuál. Resolvió, sin embargo, que la contribución era ilegal, ora se impusiese al acreedor no residente o al crédito—la deuda. Creemos que es indisputable que la contribución se fija al acreedor no residente, y que es una medida por el ingreso o interés del préstamo o préstamos para determinado año; que no es una contribución impuesta simplemente al crédito o a la deuda. La cuestión a determinar entonces es si la Legislatura de Puerto Rico tenía jurisdicción y autoridad para imponer una contribución sobre ingresos a corporaciones acreedoras no residentes que no tenían lugar de negocios en Puerto Rico ni hacían negocios allí por mediación de agentes o en alguna otra forma. La respuesta a la pregunta es tan evidente que al meramente exponer la proposición tenemos su propia respuesta. La Legislatura de Puerto Rico carece de autoridad o jurisdicción para imponer una contribución a corporaciones no residentes a base de ingresos devengados o a devengarse en transacciones celebradas y realizadas enteramente fuera de los límites territoriales de Puerto Rico. No tiene mayor facultad a este respecto que un estado.

"Mas si pudiera decirse que las leyes en cuestión no fijaban una contribución a los acreedores no residentes sino que era una impuesta al crédito o a la deuda, de los cuales los intereses en verdad forman parte, tal deuda o crédito no tiene *situs* en Puerto Rico. Su *situs* estaba en Maryland, fuera de la jurisdicción de Puerto Rico y la Legislatura de Puerto Rico no tenía autoridad o jurisdicción sobre el mismo ni podía imponerle una contribución. La deuda era un mero objeto (*chose in action*) o una propiedad personal intangible, cuyo *situs* estaba en Maryland donde estaba organizada y hacía negocios la corporación acreedora. La cuestión relativa al *situs* imponible de una deuda ha sido determinada por la decisión reciente de la Corte Suprema de los Estados Unidos en Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 100, 74 L. Ed. 371, 65 A.L.R. 1000, en la cual la doctrina previamente enunciada en el caso de Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, fué revocada expresamente, y la decisión en Cleveland, P. & A. Railroad Company v. Pennsylvania State Tax on Foreign-Held Bonds, 15 Wall. 300, 320, 21 L. Ed. 179, fué confirmada. Al hablar de dicho caso, se dijo allí:

" 'Cleveland, P. & A. Railroad Co. v. Pennsylvania—''respecto a la contribución estadual sobre bonos poseídos en el extranjero''—15 Wall. 300, 320, 21 L. Ed. 179, resolvió claramente que el estado carecía de facultad para imponer contribución al dueño de bonos de

una compañía ferroviaria doméstica, librados y pagaderos fuera de sus límites cuando éstos eran expedidos a ciudadanos y residentes de otro estado y se hallaban en poder de éste. Por voz del Juez Asociado Sr. Field la Corte dijo:

" ' "Las deudas de una corporación, al igual que las deudas de los individuos no son bienes del deudor en forma alguna; son obligaciones del deudor, y sólo tienen valor en poder de los acreedores. Para éstos constituyen propiedad y en poder de ellos pueden ser tributables. Calificar de propiedad las deudas de un deudor es simplemente usar el término equivocadamente. Toda la propiedad que pueda existir en la naturaleza de las cosas, en las deudas de corporaciones, pertenece a los acreedores, a quienes son pagaderas, y siguen el domicilio de éstos, doquiera se hallen. Sus deudas no pueden localizarse separadamente de las partes a quienes son debidas. Este principio puede ser expuesto en muchas formas distintas, y sostenido por citas de numerosos casos, pero ningún número de autoridades ni ninguna forma de expresión podría agregar nada a su obvia verdad, que se reconoce al simplemente enunciarlo." ' " Domenech, Treasurer, v. United Porto Rican Sugar Co., 62 F. (2d) 552, 555.

*Deben confirmarse las sentencias recurridas.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.