STATE BOARD OF TAX APPEALS.

J. & J. DISTRIBUTING COMPANY, PETITIONER, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT.

Decided September 24, 1940.

For the petitioner, *Frazer, Stoffer & Jacobs* (by *David Stoffer*).

For the respondent, *David T. Wilentz,* attorney-general (by *William H. Osborne, Jr.*).

QUINN, President. This is an appeal by petitioner, holder of a plenary export wholesaler's license under the Alcoholic Beverage act, from the assessment by the Beverage Division of the State Tax Department of a deficiency liquor sales tax in the amount of $2,286.63 for the period from March 1st, 1937, to January 31st, 1939. Of the amount stated, petitioner takes exception to the assessment of $1,474.76, as unwarranted. Under the statute, *R. S.* 54:43-1; *N. J. S. A.* 54:43-1 *et seq.,* as amended by *Pamph. L.* 1938, *ch.* 319, a tax is provided for at varied rates upon the sale or delivery, within the state, of alcoholic beverages intended ultimately for consumption. Sales of liquor intended for ultimate consumption out of the state are excluded from the operation of the tax. *R. S.* 54:43-2; *N. J. S. A.* 54:43-2. Donations of liquor by way of samples or otherwise are taxable as sales. Title 54:41-2.

Taxpayers are required to report to the State Tax Commissioner, on or before the fifteenth of each month, upon

forms prescribed by him, and under oath, the amounts of alcoholic beverages manufactured, distributed, transported, stored, warehoused, withdrawn from storage, imported, purchased and sold during the preceding month, and to pay the amount of the tax due, upon the filing of the report. Title 54:45-1.

The form of report devised by the Beverage Division of the State Tax Department for use by licensees of the category of petitioner, provides for a control sheet and supporting schedules designed to calculate the amount of taxable dispositions of liquors by what is commonly known as the inventory method, and such reports were filed by the petitioner herein during the deficiency period here in question as well as prior thereto. Under that method, the taxpayer first reported his inventory of liquors on hand on the first of the month, and added thereto his gross purchases and the amount of returns accepted during the month. From the total thus derived was deducted the amount of exemptions and inventory as of the close of the month, the remainder necessarily constituting the amount of taxable sales or dispositions. While schedule "D," attached to the control sheet, calls for a detailed listing of sales for the month, by accounts of individual retailers, it was testified on behalf of petitioner that until September 1st, 1938, it was granted special permission, because of the large volume of its retail business, to enter a bulk figure for sales on schedule "D," as derived by the calculation based upon inventories, aforementioned. The director in charge of the Beverage Division testified, however, that the permission to enter a bulk figure for sales was based upon the assumed condition that the figure would be derived from a totaling of the taxpayer's sales invoices, and not from the result obtained through calculation by inventory. Subsequent to September 1st, 1938, sales were concededly reported, the department consenting, directly from invoices, but differences from the tax liability shown by the inventory method were adjusted and the taxes actually paid, under approval of the department, in accordance with the latter. For purposes of this appeal, however, the issue of fact as to the requirements of the department prior to September 1st, 1938, is not of controlling importance. Whether or not the form in which

sales were reported was in strict adherence to the special permission granted by the department, the fundamental inquiry herein is as to whether the total of petitioner's taxable dispositions of alcoholic beverages during the period in question, in terms of tax dollars, exceeded the amount for which petitioner actually paid taxes during said period, and if so, by how much. We are not concerned with the enforcement of the punitive measures provided for violation of the provisions of the act respecting reports (*R. S.* 54:47-3; *N. J. S. A.* 54:47-3), but only with the determination of the actual liability of petitioner for unpaid taxes. *R. S.* 54:46-1; *N. J. S. A.* 54:46-1. In determining the issue thus presented, we must be guided by the presumption that the assessment levied is correct, but only in the sense that it was incumbent upon the petitioner to come forward with proof persuasive of the incorrectness of the assessment. *New Jersey Bell Telephone Co.* v. *Camden* (*Supreme Court,* 1939), 122 *N. J. L.* 270, 275; 4 *Atl. Rep.* (*2d*) 705.

While the operative fact toward which the proofs must be directed is the total of taxable sales, for comparison with the undisputed amount of taxes paid, it becomes obvious that any attempt to prove the amounts of actual sales by direct reference to individual sales invoices, would be futile in the case of a company which, as in the case of petitioner, makes 62,000 sales annually to 3,000 customers. Petitioner's accountant and executive partner have, however, prepared and attested to the accuracy of a schedule introduced in evidence as *Exhibit P-7*, which purports to arrive at the total of taxable sales for the period in question, as an entirety. This was accomplished by commencing with an inventory taken by the department itself, as of February 1st, 1937, adding the gallonage evidenced by petitioner's invoices of merchandise purchased thereafter, and until January 31st, 1939, and subtracting from that total the amount of another inventory taken by the department as of the date last mentioned. After deduction of exemptions on account of sales to other wholesalers in the state, and sales out of the state, there was indicated an apparent total tax liability, for the period in question, of $695,990.48, as against which a total of $695,967.18 in taxes was actually paid, leaving a balance

due of $23.30. This balance is corrected by the concession of an erroneous credit to the extent of $480 in its schedule "A" for November, 1938 (claimed by petitioner on account of sales and returns to other licensees within the state), of an additional liability of $278.57 resulting from errors in purchases reported, and of credits due petitioner of $36 on account of errors in schedule "A" for the months of April, 1937, and April, 1938. The net total due the state for the period is thus computed at $745.87, as compared with the assessment of $2,286.63.

It does not appear that any of the several components in the foregoing calculation are disputed by the respondent. The starting and closing inventories are those made by itself. The purchase invoices were checked by it and concurred in, except for the errors conceded by petitioner. The exemption items are readily subject to check by the department, and have not been excepted to by it, other than as conceded by petitioner. The method of proof adopted by petitioner has the merit of comprehensiveness, in its totaling of all credits and debits for the entire period, thereby tending to eliminate the vice of charging it for deficiencies, without crediting it for excesses in tax payments, for isolated months during the period. We regard the showing made by petitioner as *prima facie* sufficient to support its petition, and we direct our attention therefore, to the proof adduced by respondent in support of the assessment.

Respondent called as its principal witness one of its field investigators, who testified that he prepared a summary of an investigation of the records and books of the petitioner for the period in question, which was introduced into evidence as *Exhibit R*-6. The report lists figures designated as debits and credits pertaining to specific months, some of which are described as having been agreed upon, and others as disputed, by petitioner. In addition schedules are attached, apparently in support of the summary, although no connection is made to appear between them, either on the face of the exhibit, or in the proof. The items are in no case specifically identified as pertaining to errors in sales, purchases, exemptions, or otherwise. The only clue as to the makeup of specific items was afforded upon cross-examination

of this witness, where interrogation by the board disclosed that a debit charge in the sum of $417.03 for the month of October, 1937, was based primarily upon certain unchecked daily sales total sheets, referred to as "work sheets," made up by petitioner's clerks for its own purposes. It was further developed that additional assessments on account of sales were made for other months during the period, where the work sheets indicated sales in excess of those reported by petitioner. It does not appear from schedule R-6, however, or in the respondent's proofs, whether the credits assigned to petitioner included cases in which the work sheets showed less sales for particular months than reported by petitioner. We must assume not, however, in view of the positive proofs made by petitioner, not rebutted by respondent, that for the year 1937 the tax calculated upon the gallonage shown on the work sheets is less by $894.73 than that shown upon the tax reports filed, and actually paid, whereas for the period of January 1st, 1938, to August 31st, 1938, the work sheet tax is less by $76.95 than that paid.

Under the proofs it is difficult to escape the conclusion, contended for on behalf of petitioner, that the department has used the work sheets where they revealed deficiencies for particular months, but disregarded them where they would have indicated excess payments for other months. The work sheets are shown, furthermore, not to be reliable for any purpose, representing unchecked tallies dependent upon the accuracy of separate calculations and transpositions in the case of each of many thousands of invoices, by three clerks. Their use by the department, without checking for accuracy against sales invoices, which were always available for such purpose, was, under the circumstances of this case, not conducive to an accurate determination of petitioner's tax liability. The enforcement of the deficiency assessed against petitioner in this case would be unjust and oppressive. See *Farmer's Loan and Trust Co.* v. *Minnesota* (1930), 280 *U. S.* 205, 212.

Upon the whole case, we find that the assessment is erroneous, except to the extent of $745.87, and an order may be entered reducing same to that sum.

Judgment accordingly.