The Mayagüez Light, Power & Ice Co., Inc., Plaintiff and Appellant, v. Rafael Buscaglia, Treasurer of Puerto Rico, Defendant and Appellee.

No. 8330. Argued December 12, 1941.—Decided January 15, 1942.

*J. Alemañy Sosa* for appellant. *George A. Malcolm, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The essential facts of this case, as to which there is no dispute, are as follows:

The plaintiff corporation by a deed executed in the United States in the year 1924, effected a bond issue and designated as trustee the Baltimore Trust Co., of Baltimore, Maryland, which had no offices in Puerto Rico. Said bonds were sold to various persons residing on the continent to whom the corresponding interest on the bonds was paid by the trustee with funds timely sent to the latter by the borrowing corporation.

In 1931 the Treasurer of Puerto Rico demanded from the plaintiff payment of the income tax pertaining to the years from 1924 to 1931 on the interest paid during that 7-year period to the bondholders residing in the United States. Feeling aggrieved by that decision the plaintiff took an appeal to the Board of Review and Equalization which affirmed the action of the Treasurer. The plaintiff, without making any protest, paid the sums claimed by the Treasurer which amounted to $6,392.61.

On March 1, 1933, the plaintiff filed in the Treasury Department an application for refund and on January 22, 1935, it presented a supplemental application. The Treasurer denied the refund on the grounds: (a) That the payment had not been made under protest; (b) that the Treasurer lacked power to make a refund in these cases; and (c) that at the time the tax was levied, collected, and paid, the same was legal. On December 7, 1939, the plaintiff requested and was denied a reconsideration.

In the complaint it is alleged that upon a new application for such reconsideration being made, on December 13, 1939, the plaintiff and the Treasurer agreed to submit to the Attorney General of Puerto Rico a request for advice as to whether or not the Treasurer had power to order the refund; that on April 19, 1940, the Attorney General rendered an opinion in the sense that the taxes sought to be refunded had been illegally collected and that Section 75 of the Income Tax Act Act of 1925 (Act No. 74, Sess. Laws, p. 400) authorized the Treasurer to pay back the amount thereof, and that the matter of making the refund rested in the sound discretion of that officer; that relying on the above-mentioned opinion of the Attorney General, the plaintiff again requested the refund, and the Treasurer denied the same and insisted on his lack of power to order the same.

Alleging that a controversy existed between the plaintiff and the Treasurer of Puerto Rico concerning the construc-

tion of the Income Tax Act of 1925 and especially as to its sections 64(b), 75, and 76, and that it was interested in obtaining a declaration as to the effect of the decision of the Federal Supreme Court in *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, followed by this Supreme Court in *Gallardo* v. *United Porto Rican Sugar Co.,* 42 P.R.R. 624, the plaintiff applied to the District Court of San Juan for a declaratory judgment: (1) As to whether a taxpayer who pays without protest an income tax illegally assessed and collected, is entitled to apply for the refund thereof within four years from the date of such payment; (2) as to whether or not the Treasurer has power to order such refund; and (3) as to whether a tax which at the time of its assessment and payment had already been declared to be illegal by the Supreme Court of Puerto Rico, is illegal and unjust.

The Treasurer demurred to the complaint on the ground that the latter did not state facts sufficient to constitute a cause of action and, further, that the court had no jurisdiction of either the person of the defendant or of the subject matter.

On January 23, 1941, the lower court rendered judgment sustaining the demurrer and dismissing the complaint and imposed the payment of costs on the plaintiff. Thereupon the plaintiff appealed and in its brief it has assigned two errors:

"1. In holding that there is no controversy between the plaintiff and the Treasurer, because when the complaint was filed in this' case the Treasurer had already denied the application for refund.

"2. In deciding that even though it should be possible to move again for a reconsideration by the Treasurer after judgment were rendered in this case, a declaratory judgment would not lie because such a judgment would not put an end to the controversy, since it would still be incumbent on the Treasurer to determine on the basis of the facts submitted to him and not on the basis of the findings of the court, whether or not he ought to reconsider his decision, whereas the controversy stated by the plaintiff in this case as existing between the plaintiff and the Treasurer is not based on any ques-

tion of fact, but on the viewpoint of the Treasurer that he has no power under the law to pay back the amount of the tax, as the latter had been paid without protest."

 The reasons which the lower court had for dismissing the complaint were as follows:

"In the complaint this court is not asked to declare whether or not the plaintiff is entitled to the refund or whether or not the Treasurer is bound to make the same. From the complaint it appears, and counsel for the plaintiff confirmed it when arguing upon the demurrer, that the plaintiff concedes that it is discretionary with the Treasurer to refund or not in a case such as the one stated in the complaint. We are not convinced that the Treasurer has any discretion where the claim is timely made or where from the facts determined by the Treasurer himself it appears that the taxes were improperly assessed. It is difficult for us to conceive that it was the legislative intention to leave to the whim of that officer the determination of the taxpayers to whom he would do justice and those to whom he would deny the same. It is evident, however, that in accordance with the Income Tax Act, the Treasurer is the proper officer to determine, not as a matter of discretion but as a matter of fact and of law, whether or not a claim for refund is well founded; and that the determination by the Treasurer as to the merits of the claim for refund is final and conclusive. See *Porto Rico Fertilizer Co.* v. *Treasurer,* 54 P.R.R. 644. It appears, then, that regardless of the existence of the discretionary power which the parties wish to confer on the Treasurer, it is incumbent on the latter and not on the judicial tribunals, to decide upon the merits of a claim for refund, for which reason we could not, even though the plaintiff had requested it, make any declaration as to the right of the plaintiff or the obligation of the Treasurer in the case stated in the complaint.

"Although we can not, in this proceeding, definitely decide the real controversy between the parties, that is, whether or not the claim for refund is proper, we are asked to express our opinion as to whether or not the Treasurer has power to grant the refund, and whether or not the tax was improperly assessed.

"From the complaint it appears that the ruling sought is an academic one, for the Treasurer has already denied the claim for refund and it does not appear that the case is pending before him in any way. In other words, if at some time in the past there was

a controversy between the plaintiff and the Treasurer, the same ceased to exist before the complaint was filed in this case.

"Possibly the plaintiff proposes to apply to the Treasurer for a reconsideration in the event that it obtains a favorable judgment in this case, and on the basis of such possibility it considers that its controversy with the Treasurer still exists. Even so, the declaratory judgment proceeding does not lie, because such a judgment would not put an end to the supposed controversy, as it would always be incumbent on the Treasurer to decide, on the basis of the facts before him and not of the findings of this court, whether or not he ought to reconsider his decision. A declaratory judgment will not be granted to determine the viewpoint to be adopted by another tribunal or an administrative board or officer, as to questions of law which may be involved in matters pending before said tribunal, board, or officer. *Jefferson County* v. *Chilton*, 236 Ky. 614, 33 S. W. (2d) 601; *Poore* v. *Poore*, 201 N. C. 791, 161 S. E. 532; *Moore* v. *Louisville Hydro-Electric Co.*, 226 Ky. 20, 10 S. W. (2d) 466."

We have little to add to what has been so clearly stated by the trial court. Where a tax has been voluntarily paid, the taxpayer has no right of action to recover the sum thus paid. Such right only exists where the payment has been made under protest. In *Bonet* v. *Yabucoa Sugar Co.*, 306 U. S. 505, 83 L. Ed. 946, the Federal Supreme Court, in reversing the judgment of the Circuit Court of Appeals (98 F. (2d) 398) and affirming that rendered by this Supreme Court (50 D. P.R. 962; 51 P.R.R. 134), said:

"Respondent sued the Treasurer of Puerto Rico in a local district court for recovery of 1927 income taxes paid under the laws of the Island. By construction of the local Puerto Rican statutes permitting suits for refunds, the local district court found that no right had been granted to sue at law for taxes voluntarily paid. The bill of complaint was then dismissed for lack of jurisdiction, because it disclosed that the tax in question had been paid voluntarily and without protest. The Supreme Court of Puerto Rico affirmed, but was reversed by the United States Circuit Court of Appeals.

"As conceded by respondent, this suit cannot be maintained unless authorized by a Puerto Rican law, because Puerto Rico cannot be sued without its consent. It is also conceded that the Puerto Rican legislature is not obligated to provide a judicial remedy for tax

refunds. Respondent's contentions here are that the governing statutes of the Island do authorize the present suit 'either by express language or by necessary implication,' and that the Puerto Rican courts erroneously construed the local statutes.

"Section 75 of the controlling Income Tax Act of Puerto Rico, approved August 6, 1925, authorizes the Treasurer 'to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, . . . and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected,' and requires him to 'report to The Legislature of Porto Rico at the beginning of each regular session . . . all transactions under this section.'

"The courts of Puerto Rico construed Section 75 to mean that the Treasurer's refusal to refund taxes not paid under protest is final; that the local statutes grant the courts no jurisdiction to review this refusal; and that after the Treasurer's report to the legislature, a voluntary taxpayer's complaint must be addressed to the legislature. Disagreeing with this construction given the statute by the courts of Puerto Rico, the Circuit Court of Appeals (one Judge dissenting) found that the 1925 Act plainly provided a resort to the courts, even in suits to recover taxes voluntarily paid without protest.

"It is necessary that we examine some of the considerations which led to the Puerto Rican courts' construction of Section 75 of the 1925 Act. For illustration, Section 66 of the Puerto Rican Income Tax Law of 1919 imposed upon the Treasurer the duty of making tax refunds (as in Section 75 of the 1925 Act), but Section 66 contained an express provision for 'appeal to the courts' if a taxpayer's claim were denied by the Treasurer. The omission of this express provision from Section 75 and all other Sections of the 1925 Act was logically considered by the Puerto Rican courts to be of significance in the construction of that Act. The right of appeal to the courts contained in Section 66 of the 1919 Law was first omitted from the 1921 Puerto Rican Law, and this led the Supreme Court of Puerto Rico to declare in the present case that 'since 1921, . . . the right to bring suits for the recovery of taxes other than those paid under protest has been abrogated.'

"Furthermore, four different sections of the 1925 Act (57, 60, 62 and 76(a)) constitute a statutory plan under which a taxpayer who pays under protest is granted the right to sue in the courts for refund. Such a taxpayer can sue at law under these sections

only if he has been denied relief by both the Treasurer and the Board of Review and Equalization of the Island. But these sections nowhere expressly authorize appeal from the Treasurer to the Board by one who paid taxes without protest. And Section 76(b), which the Circuit Court of Appeals interpreted as authorizing suit by a taxpayer who paid without protest, expressly prohibits suit in court 'until a claim for refund or credit has been duly filed with . . . the Board of Review and Equalization *on appeal,* according to the provisions of law in that regard, and the regulations established in pursuance thereof.' (Italics supplied.) Since a voluntary taxpayer is given no express right of appeal from the Treasurer to the Board by the 'provisions of law in . . . regard' to such appeals, he is not expressly authorized to comply with the condition precedent to right of suit under Section 76(b). Rights denied by the statutes could not be granted by regulations.

"In addition, Section 76(b) of the 1925 Act is practically identical in language with Section 3226 of United States Revised Statutes governing suits for refunds of United States taxes. But the legislature of Puerto Rico—while apparently using Section 3226 as a model—omitted from 76(b) the clause of Section 3226 reading 'suit or proceeding [for tax refund] may be maintained, whether or not such tax . . . has been paid under protest or duress.' This substantial adoption of Section 3226, omitting the clause authorizing suit without protest, (as well as the similar omission from the 1921 Act), could hardly represent accidental oversight, but instead indicates a deliberate legislative purpose."

See *Porto Rico Fertilizer Co.* v. *Treasurer,* 54 P.R.R. 644.

We agree with the lower court that any judgment which might be rendered in this case would be academic, for even though we were to concede that the Treasurer has the necessary discretionary power to pay back the taxes claimed —a thing which we do not hold—said officer would not be bound to obey a decision which would only recognize in him a discretionary power that he has already refused to exercise.

The judgment appealed from must be affirmed.