JUAN G. GALLARDO, TESORERO DE PUERTO RICO, demandante y apelado, *v.* THE UNITED PORTO RICAN SUGAR COMPANY, demandada y apelante.

No. 5013.—*Sometido:* Julio 22, 1930.  *Resuelto:* Julio 20, 1931.

*J. Henri Brown, C. Ruiz Nazario, G. E. González,* abogados de la apelante; *Attorney General James R. Beverley* y *Arturo Ortiz Toro, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Se trata de un pleito para cobrar la suma de $32,452.48, radicado por el Tesorero de Puerto Rico contra la United Porto Rican Sugar Company of Porto Rico. Los hechos fue-

ron que la United Porto Rican Sugar Company había comprado todos los bienes de ciertas corporaciones domésticas organizadas bajo las leyes de Puerto Rico, y había asumido las obligaciones de todas esas otras corporaciones; que las aludidas corporaciones domésticas se habían disuelto y repartido entre sus accionistas el producto de sus liquidaciones; que dichas corporaciones domésticas, causantes de la demandada, habían pagado intereses y varias corporaciones extranjeras en los Estados Unidos, intereses que estaban sujetos a tributación en Puerto Rico; que ninguna de esas corporaciones extranjeras tenía oficina o agente en Puerto Rico; que, por tanto, las varias corporaciones domésticas debieron haber retenido en Puerto Rico la cantidad debida en concepto de contribuciones al Pueblo de Puerto Rico. El interés ya no se adeudaba, sino que había sido satisfecho por estas corporaciones domésticas a las ameritadas corporaciones extranjeras.

La principal alegación de la contestación fué la de que estas deudas no tenían un *situs* imponible en Puerto Rico; además, que la ley o leyes a virtud de las cuales el Tesorero trataba de cobrar estas contribuciones, rectamente interpretadas no imponían una contribución sobre intereses a estas corporaciones; que a tenor de la teoría de que las deudas de intereses no tenían un *situs* imponible en Puerto Rico, la contestación expresó que todas las deudas por las cuales se trataban de cobrar intereses se habían contraído en Baltimore, Maryland, adonde se adeudaba todo el dinero; que deducir las contribuciones de la cantidad de intereses adeudados violaría la obligación de un contrato, toda vez que la totalidad de los intereses era adeudada en Baltimore, Maryland.

La sección 3 de la Ley No. 43 de 1921, tal cual está en vigor, lee como sigue:

"Todos los ingresos definidos en esta Ley, que sean recibidos o devengados por ciudadanos de los Estados Unidos o extranjeros, residan o no en esta isla, y por toda corporación, asociación o sociedad, organizada o constituída en Puerto Rico, en los Estados Uni-

dos o en el extranjero y que hicieren negocios en esta isla, directamente, o por medio de agentes o representantes, o que en cualquier forma deriven ingresos de fuentes radicadas en esta isla, o de la venta en Puerto Rico, o en el exterior, de frutos, productos o manufacturas recolectados, producidos o manufacturados en Puerto Rico, estarán sujetos al pago de la contribución sobre ingresos que por esta Ley se establece.

"En el caso de una sucesión o de una comunidad de bienes, los ingresos se calcularán individualmente en la parte proporcional que a cada heredero o partícipe corresponda, según ley."

La sección 19 de la Ley No. 74 de 1925 dispone lo siguiente:

"Sección 19.—(a) En el caso de un individuo no residente que no sea ciudadano de Puerto Rico las siguientes cantidades de ingreso bruto serán consideradas como ingreso derivado de fuentes radicadas dentro de Puerto Rico;

"(1) Intereses sobre bonos, pagarés u otras obligaciones de residentes, que devenguen intereses bien sean personas naturales o jurídicas."

El demandante excepcionó la contestación. El caso fué sometido a la Corte de Distrito de San Juan mediante alegatos, y la corte sostuvo la excepción previa del Gobierno.

■■■ Por regla general, probablemente sin excepción, los inmuebles no son imponibles salvo en el sitio en que están ubicados. En forma similar, muy generalmente no puede imponerse contribución a bienes muebles tangibles salvo en el sitio en que se hallan. *Safe Deposit & Trust Co. of Baltimore* v. *Virginia* 280 U. S. 83, y casos allí citados. Los tribunales, cuando se trata de tales bienes tangibles, se han negado a seguir la máxima *Mobilia sequuntur personam,* y han resuelto que sólo se debe acudir a ella cuando la conveniencia y la justicia lo requieren; que el uso principal de una ficción legal es para evitar una injusticia. *Union Transit Co.* v. *Kentucky,* 199 U. S. 194, 208.

Tremendas dificultades han surgido sobre la materia del *situs* para la tributación de bienes intangibles como bonos, pagarés, cuentas corrientes, y otras evidencias de crédito.

Hasta una época comparativamente reciente, la teoría de un gran número de estados era que los bienes intangibles podían ser objeto de contribución no sólo en el domicilio del dueño, sino que, para varios fines, en el domicilio del deudor también. *Blackstone* v. *Miller,* 188 U. S. 109, es quizá el caso principal sobre la materia. La opinión fué escrita por el Juez Asociado Sr. Holmes, disintiendo el Juez Asociado Sr. White. Los hechos fueron que un residente de Illinois había dejado más de cuatro millones de dólares en depósito en Nueva York, probablemente, según se imaginó la corte, para inversión futura. El dueño de este dinero o valores falleció. El estado trató de imponer una contribución sobre traspaso de herencia, y la Corte Suprema de los Estados Unidos resolvió que Nueva York podía legalmente hacer eso toda vez que la contribución era sobre un traspaso del dinero, y puede decirse que por la razón de la protección dada por Nueva York proporcionaba los medios de cobrar ese dinero y de que se daba validez a la deuda por el hecho de que la ley del lugar en que se encontraba el deudor lo haría pagar. El tribunal también resolvió que la máxima *Mobilia sequuntur personam* sólo debía ser invocada cuando la equidad y la justicia lo requerían; y que no podía ser invocada con éxito en *Blackstone* v. *Miller.*

Ese caso fué seguido en grande escala por varias cortes de los Estados Unidos. Recientemente, sin embargo, en *Farmers Loan Co.* v. *Minnesota,* 280 U. S. 204, el tribunal, por voz de su Juez Asociado Sr. McReynolds, dijo:

"El caso de *Blackstone* v. *Miller, supra,* y ciertas opiniones aprobatorias del mismo, prestan apoyo a la doctrina de que ordinariamente, *choses in action* están sujetos a contribución tanto en el domicilio del deudor como en el del acreedor; que dos estados pueden imponer contribuciones, basándose en principios diferentes o más o menos inconsistentes, sobre el mismo traspaso testamentario de tal propiedad sin que ello viole la Enmienda XIV. La tendencia inevitable de ese criterio es perturbar las buenas relaciones entre los estados y producir la clase de descontento que se esperó se apaciguaría después del establecimiento de la Unión. The Federa-

list, No. VII. El efecto práctico del mismo ha sido malo; tal vez las dos terceras partes de los estados han tratado de evitar el mal recurriendo a leyes de exención recíprocas. Ha sido fuertemente atacado en principio. Habiendo reconsiderado los argumentos que lo sostenían a la luz de nuestras opiniones más recientes, estamos obligados a declararlo insostenible. *Blackstone* v. *Miller* no puede ya considerarse como una correcta exposición de la ley vigente; y, para evitar malas interpretaciones, se revoca definitivamente.

"Se han expuesto cuatro criterios distintos con relación al *situs* para la tributación de obligaciones públicas negociables. Uno lo fija en el domicilio del dueño; otro, en el del deudor; el tercero, en el sitio en que se hallan los instrumentos—físicamente—; y el cuarto, dentro de la jurisdicción donde el dueño ha hecho que ellas lleguen a ser parte integrante de un negocio localizado. Si cada estado puede adoptar uno de estos criterios y en tal virtud imponer contribuciones, evidentemente los mismos bonos pueden declararse presentes en dos, o tres, o cuatro sitios al mismo tiempo, a los fines contributivos. Una posibilidad tan alarmante sugiere una premisa errónea."

"Si bien las deudas no tienen un *situs* territorial real, hemos declarado que un estado puede aplicar propiamente la regla *mobilia sequuntur personam*, y tratarlas como localizadas en el domicilio del acreedor para fines de contribución. Los bienes tangibles con un *situs* permanente, y su traspaso testamentario, sólo pueden ser tributados por el estado en que se encuentran. Y, a nuestro juicio, las razones generales declaradas como suficientes para impedir que se les impongan contribuciones por dos estados, se aplican, bajo las presentes circunstancias, con no menor fundamento, a los intangibles con *situs* imponible por la debida aplicación de la ficción legal. Las condiciones primitivas han dejado de existir; los negocios se llevan a cabo ahora en una escala nacional. Una gran parte de la riqueza del país está invertida en valores negociables, cuya protección contra discriminación y contribución injusta y opresiva, es materia de gran trascendencia. Hace veinticuatro años, el caso de *Unión Refrig. Transit Co.* v. *Kentucky, supra*, declaró: '. . . . en vista del enorme aumento de tales bienes (muebles tangibles) desde la introducción de los ferrocarriles y el desarrollo de las fábricas, la tendencia ha sido, en años recientes, tratarlos como que tienen su propio *situs* para fines de tributación, y, correlativamente, eximirlos en el domicilio del dueño.' Y, en verdad, las condiciones existentes demandan no menos imperativamente la protección de *choses in action* contra tributos múltiples, bien siguiendo una aplicación errónea de una ficción legal, o teorías contradictorias sobre el derecho de un so-

berano a imponer contribuciones. Por muchos años la corriente de las decisiones aquí ha seguido esa dirección.

"La tributación es algo intensamente práctico, y las leyes relativas a ella deben ser interpretadas y aplicadas de manera que se eviten, hasta donde fuere posible, consecuencias injustas y opresivas. Hemos determinado que por lo general los bienes intangibles pueden ser propiamente objeto de contribución en el domicilio de su dueño, y no podemos hallar razón suficiente para decir que no tengan derecho a disfrutar de la inmunidad contra la imposición de contribuciones en más de un sitio, al igual que la que se le otorga a los tangibles. La diferencia entre las dos cosas, aunque bastante obvia, parece insuficiente para justificar la dura y opresiva discriminación contra los bienes intangibles que se propugna a favor de Minnesota.

"El caso de *Railroad Company* v. *Pennsylvania*—'*State Tax on Foreign Held Bond Case*'—15 Wall. 30, 320, claramente resolvió que el estado carecía de facultad para imponer contribuciones al dueño de bonos de una corporación ferroviaria doméstica, expedidos y pagaderos fuera de sus límites cuando fueron librados a, y se hallaban en posesión de, ciudadanos y residentes de otro estado. Por voz del Juez Asociado Sr. Field, la corte allí dijo:

" 'Pero las deudas de una corporación, como las de los individuos, no son bienes de los deudores, en sentido alguno; son obligaciones de los deudores, y sólo tienen valor en manos de los acreedores. Con ellos, son bienes, y en sus manos pueden ser objeto de tributación. Designar las deudas como bienes del deudor es, sencillamente, hacer mal uso de los términos. Todos los bienes que puedan haber en las deudas de las corporaciones, pertenecen a los acreedores, a quienes son pagaderas, y siguen el domicilio de éstos, cualquiera que sea. Sus deudas no pueden tener una localidad separada de las partes a quienes se les deben. Este principio puede ser expuesto en muchas y diferentes maneras, y sostenido por citas de numerosos fallos, pero ningún número de autoridades, ni forma de expresión alguna, podría agregar nada a su obvia verdad, que se reconoce por su simple enunciación.' "

El Juez Asociado Sr. Stone estuvo conforme con el resultado, y los Jueces Asociados Sres. Holmes y Brandeis disintieron.

La excepción notable a la aplicación de dicha máxima es

cuando el dueño de valores establece una agencia en otra jurisdicción para préstamos o inversiones, o algo similar, según se demuestra en el caso de *Bristol* v. *Washington County,* 117 U. S. 133.

La apelante hizo mucho hincapié en el hecho de que la Legislatura de Puerto Rico no tuvo la intención de imponer una contribución a los intereses pagados cual en este caso. La lectura que hemos hecho de la ley nos conduce a una conclusión opuesta. Creemos que fué la intención imponer una contribución sobre ingresos derivados de cualquier fuente en Puerto Rico, y que las palabras referentes a frutos y otros géneros mencionados en la ley sólo eran aplicables a las ventas.

Hemos dicho que los intereses fueron en realidad de verdad satisfechos a los acreedores en Baltimore. La contribución se impone sobre los acreedores o el crédito. Las varias leyes de la Legislatura no impusieron pena alguna sobre un deudor que dejara de retener los derechos sobre intereses que se alegaran adeudados. Una duda seria, surge, de si cae dentro del poder de la Legislatura obligar a una corporación local a pagar contribuciones que real y fundamentalmente son pagaderas por otras personas.

Para resumir el punto principal. La posición de la Corte Suprema de los Estados Unidos es que así como los bienes inmuebles y muebles tangibles, bajo un debido proceso de ley únicamente pueden tener un solo *situs* para tributación, de igual·forma, con muy limitadas excepciones, los bienes intangibles deben tener un solo *situs* para fines de contribución. A la máxima *Mobilia seguuntur personam,* en bien de la justicia y la conveniencia, se le da la más amplia aplicación posible. Véanse, además, *Safe Deposit & Trust Co.* v. *Virginia, supra,* y *Baldwin* v. *Missouri,* 281 U. S. 586.

*Debe revocarse la sentencia apelada y declararse la demanda sin lugar.*