Porto Rico Fertilizer Company, peticionaria, *v.* Rafael Sancho Bonet, Tesorero de Puerto Rico, Gonzalo Diago, Eduardo Capó Cintrón, Benigno Pacheco Tizol, F. D. A. Carpenter, Domingo Antonmatei y Sabino Valdés, como miembros componentes de la Junta de Revisión e Igualamiento de Puerto Rico, demandados.

Núm. 317.—*Sometido:* Enero 24, 1939. *Resuelto:* Abril 26, 1939.

*Brown, González & Newsom,* abogados de la peticionaria; *Hon. Procurador General B. Fernández García* y *Emilio de Aldrey, Procurador General Auxiliar,* abogados de los demandados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

La Porto Rico Fertilizer Company, una corporación organizada bajo las leyes de esta Isla, compareció ante esta Corte Suprema en noviembre 23, 1938, y le pidió que librara un auto de *mandamus* perentorio dirigido a los demandados como miembros componentes de la Junta de Revisión e Igualamiento, ordenándoles que procedieran a considerar y a resolver cierta apelación por ella interpuesta para ante la dicha junta en agosto 26, 1938, que la junta había desestimado.

Se ordenó a los demandados que comparecieran a mostrar causa, si alguna tuvieren, para la no expedición del auto. El 9 de enero de 1939 comparecieron en efecto ambas partes e informaron oralmente, presentando luego memorándums en apoyo de sus respectivas contenciones.

Veamos los hechos. Se alega en la petición que en octubre 2, 1933, la peticionaria, de acuerdo con el artículo 64 de la Ley de Contribuciones sobre Ingresos de 1925, según enmendada, solicitó del Tesorero de Puerto Rico la devolución de $6,683.45, $8,059.83 y $5,489.93 que le pagara voluntariamente como agente retenedora de la Virginia–Carolina Chemical Corporation, de Richmond, Virginia, por contribución de ingresos sobre intereses pagados por la peticionaria a la Vir-

ginia–Carolina Chemical Corporation, durante los años 1929, 1930 y 1931; que como fundamento de la petición de reintegro adujo que el ingreso sobre el cual se había impuesto la contribución no tenía *situs* tributable en Puerto Rico y que la contribución pagada no se debía, todo ello de acuerdo con la doctrina del caso de *Gallardo* v. *United Porto Rican Sugar Co.*, 42 D.P.R. 646, confirmado por la Corte de Circuito de Apelaciones del Primer Circuito en *United Porto Rican Sugar Co.* v. *Gallardo*, 62 F. (2d) 552; que en octubre 30, 1933, el Tesorero denegó el reintegro y la peticionaria basándose en lo dispuesto en el artículo 355 del reglamento promulgado por el propio Tesorero para la ejecución de la Ley de Contribuciones sobre Ingresos, radicó demanda en noviembre 3, 1933, en la Corte de Distrito de San Juan, contra el repetido Tesorero, solicitando se le ordenara la devolución; que en marzo 1, 1934, la corte de distrito dictó sentencia declarando la demanda sin lugar y la peticionaria apeló para ante esta Corte Suprema que confirmó la sentencia en noviembre 13, 1935 (49 D.P.R. 45), reiterando su confirmación al resolver dos mociones de reconsideración en julio 23, 1936, y febrero 26, 1937 (50 D.P.R. 405 y 51 D.P.R. 67), sin que se sostuviera en ninguna de las opiniones la necesidad de apelar para ante la Junta de Revisión e Igualamiento y que en abril 13, 1937, la peticionaria apeló para ante la Corte de Circuito de Apelaciones del Primer Circuito que al confirmar la sentencia recurrida (98 F. (2d) 398), definió en su opinión por primera vez el procedimiento a seguir por el contribuyente para obtener la devolución de contribuciones sobre ingresos pagadas voluntariamente, con el efecto de anular lo dispuesto en el artículo 355 del Reglamento del Tesorero, y distinguió también por primera vez entre el procedimiento a seguir para obtener el reintegro en casos de pagos voluntarios y el ya fijado por esta corte para obtenerlo cuando se paga bajo protesta.

Sentadas esas bases, sigue alegando la peticionaria en su solicitud que ni la ley ni el reglamento fijan término alguno para apelar para ante la Junta de Revisión e Igualamiento contra la resolución del Tesorero denegando el reintegro de las contribuciones sobre ingresos pagadas voluntariamente, a que se refiere el apartado (*b*) de la sección 76 de la ley, y que en agosto 26, 1938, apeló para ante la junta de la resolución del Tesorero de octubre 30, 1933, negándose la junta a considerar en sus méritos el recurso por estimar que se había interpuesto fuera de término.

Sostiene entonces la peticionaria que la actuación de la junta es ilegal y pide el auxilio de esta corte mediante la expedición del *mandamus* a que hicimos referencia.

El 27 de marzo último la Corte Suprema de los Estados Unidos al resolver el caso de *Sancho Bonet, Tesorero* v. *Yabucoa Sugar Company,* por medio de su Juez Sr. Black, se expresó como sigue:

"La Yabucoa Sugar Company demandó al Tesorero de Puerto Rico ante una corte de distrito local en recobro de contribuciones de ingresos del año 1927 pagadas bajo las leyes insulares. Interpretando los estatutos locales de Puerto Rico autorizando pleitos sobre reembolso de contribuciones, la corte de distrito declaró que las leyes no daban derecho a demandar por contribuciones pagadas voluntariamente. La demanda fué desestimada por falta de jurisdicción, ya que de ella se desprendía que la contribución objeto de litigio había sido pagada voluntariamente, sin protesta. La Corte Suprema de Puerto Rico confirmó la sentencia, pero ésta fué revocada por la Corte de Circuito de Apelaciones.

"Según acepta la propia Yabucoa Sugar Company, este caso no puede ser sostenido sin autorización de una ley de Puerto Rico, ya que Puerto Rico no puede ser demandado sin su consentimiento. También se acepta que la Legislatura de Puerto Rico no viene obligada a proveer un remedio judicial para el reembolso de contribuciones.

"Son contenciones de la Yabucoa Sugar Company que las leyes insulares sobre la materia autorizan el presente pleito 'bien por el lenguaje expreso o por necesaria inferencia', y que las cortes de Puerto Rico interpretaron erróneamente los estatutos locales.

"La sección 75 de la vigente Ley de Contribuciones sobre Ingresos de Puerto Rico, aprobada en 6 de agosto de 1925 (Leyes de Puerto Rico de 1925, páginas 400, 536) autoriza al Tesorero a 'remitir', reintegrar, y devolver todas las contribuciones errónea o ilegalmente cobradas . . . y toda contribución que aparezca injustamente impuesta o en cantidad excesiva o de cualquier manera erróneamente cobrada', y le ordena rendir 'un informe a la Legislatura de Puerto Rico, al empezar cada sesión ordinaria, de todas las transacciones que en esta sección se autorizan'.

"Las cortes de Puerto Rico interpretaron la sección 75 de modo que la negativa del Tesorero o reintegrar contribuciones pagadas sin protesta es definitiva; que los estatutos locales no dan a las cortes jurisdicción para revisar esta negativa, y que después del informe del Tesorero a la Legislatura, las demandas de un contribuyente voluntario deben ser dirigidas a la propia Legislatura. Disintiendo de esta interpretación dada al estatuto por las cortes de Puerto Rico, la Corte de Circuito de Apelaciones (con la opinión disidente de uno de sus jueces) resolvió que la ley de 1925 claramente proveía el remedio de recurrir a las cortes, aún en pleitos para recobrar contribuciones pagadas voluntariamente sin protesta.

"Es necesario que examinemos algunas de las razones que llevaron a las cortes de Puerto Rico a su interpretación de la sección 75 de la ley de 1925. Por ejemplo, la sección 66 de la Ley de Contribución de Ingresos de Puerto Rico de 1919 (leyes de 1919, páginas 612, 666), imponía al Tesorero la obligación de hacer los reintegros contributivos (como en la sección 75 de la ley de 1925), pero la sección 66 contenía una disposición expresa para 'recurrir a los tribunales de justicia' si la reclamación del contribuyente fuera denegada por el Tesorero. La supresión de esta expresa disposición de la sección 75 y otras secciones de la ley de 1925, fué lógicamente considerada por las cortes de Puerto Rico como de gran importancia en la interpretación de dicha ley. El derecho de apelación a las cortes contenido en la sección 66 de la ley de 1919 fué por primera vez suprimido en la de Puerto Rico de 1921 (Leyes de Puerto Rico de 1921, página 312) y esto llevó a la Corte Suprema de Puerto Rico a resolver en el presente caso que 'Desde 1921 . . . el derecho a instruir litigios sobre devolución de contribuciones, a no ser aquellas pagadas bajo protesta, ha sido abrogado.'

"Además, cuatro distintas secciones de la ley de 1925 (57, 60, 62 y 76A) constituyen un procedimiento estatutario bajo el cual un contribuyente que pague bajo protesta tiene derecho a demandar en corte el reintegro. Tal contribuyente puede demandar al amparo de

la ley bajo estas secciones únicamente si su reintegro ha sido denegado por ambos el Tesorero y la Junta de Revisión e Igualamiento de la isla. Pero en ninguna parte de estas secciones expresamente se autoriza una apelación de la decisión del Tesorero para ante la junta por uno que haya pagado las contribuciones sin protesta. Y la sección 76B, que de acuerdo con la interpretación de la Corte de Circuito de Apelaciones autoriza el pleito por un contribuyente que haya pagado voluntariamente, expresamente prohibe el pleito 'hasta que debidamente se haya presentado al Tesorero y *en apelación* ante la Junta de Revisión e Igualamiento una reclamación de reintegro o crédito, según lo establecido por la ley en ese sentido y por los reglamentos dictados de acuerdo con dicha ley.' (Itálicas nuestras.) Como a un contribuyente voluntario no le ha sido concedido derecho expreso alguno de apelación del Tesorero a la Junta 'según lo establecido por la ley' en relación con dichas apelaciones, no tiene autorización expresa para cumplir con la condición previa al derecho al pleito bajo la sección 76B. Los derechos negados por ley no pueden ser concedidos por un reglamento.

''Además, la sección 76B de la ley de 1925 es prácticamente idéntica en lenguaje a la sección 3226 de los Estatutos Revisados de los Estados Unidos sobre pleitos para reintegro de contribuciones de los Estados Unidos. Pero la Legislatura de Puerto Rico, que aparentemente tomó como modelo la sección 3226, omitió en la 76B la cláusula de la sección 3226 que dispone que un 'pleito o procedimiento para reintegro de contribuciones será declarado con lugar, haya sido tal contribución pagada o no bajo protesta o compulsión.' Esta adopción sustancial de la sección 3226, omitiendo la cláusula que autoriza el pleito sin protesta (así como la misma omisión en la ley de 1921) difícilmente podría ser considerada como inadvertencia, y por el contrario indica un deliberado propósito legislativo.

''El Congreso por primera vez concedió autoridad local al Gobierno de Puerto Rico en 1900 (ley de 12 de abril de 1900, 31 Stat. 77) y razonablemente enmendó el plan original en 1917 (ley de marzo 2, 1917, 39 Stat. 951). Ambas leyes manifiestan la intención congresional de conservar—en armonía con nuestro sistema de gobierno—las entonces existentes prácticas gubernativas. Las leyes y ordenanzas entonces efectivas y no contrarias a nuestras leyes o constitución fueron mantenidas en completa vigencia, sujetas a alteración por la Legislatura de Puerto Rico o el Congreso. Los tribunales de jurisdicción original y de apelación, su jurisdicción y sus procedimientos, fueron preservados por el Congreso y los funcionarios locales dejados en sus cargos. Y este tribunal se ha mostrado con-

trario a revocar a los tribunales de Puerto Rico en materias de carácter puramente local, o a resolver contra la interpretación local de un asunto local que este tribunal no estimare claramente errónea; y se ha inclinado a aceptar la interpretación dada por una corte local a un estatuto local y a sostener tal interpretación en ausencia de claro o manifiesto error.

"Las leyes contributivas de Puerto Rico constituyen materia puramente local y la tradicional repugnancia de este tribunal a revocar la interpretación de tales estatutos locales por las cortes locales tiene especial aplicación a la interpretación de las leyes de Puerto Rico por tribunales puertorriqueños. Al desarrollo ordenado del sistema de gobierno de Puerto Rico como parte integrante de nuestro sistema de gobierno, se contribuye debidamente por medio de una cuidadosa y consistente adhesión a la política legislativa y judicial de deferencia al procedimiento local y a los tribunales de la Isla.

"Las sentencias de las cortes de Puerto Rico en este caso no están faltas de lógica o fundamento. · Ellas encarnan un reconocimiento de nuestra separación constitucional de poderes entre la rama legislativa y la judicial de gobierno. Creyendo que la Legislatura había rehusado conceder a un contribuyente que hubiera calculado su propia contribución de sus propios archivos y pagado la misma voluntariamente y sin protesta el derecho a demandar, las cortes de Puerto Rico correctamente rehusaron hallar en el estatuto inferencias que claramente no estaban allí. Al considerar la previa interpretación de un estatuto puertorriqueño por la Corte Suprema de Puerto Rico, esta corte dijo, 'Por lo menos, la interpretación adoptada en Puerto Rico ·no violenta las palabras del estatuto; dicha interpretación se refiere a casos locales bajo un sistema en el que la corte insular está llamada a entender constantemente, y no estamos preparados, en contrario al peso justamente atribuído a la decisión local, para decir que es errónea.' Así, no podemos decir en este caso que las cortes de Puerto Rico cometieron error. Al dejar de sostener su interpretación de los estatutos locales, la Corte de Circuito de Apelaciones actuó erróneamente.

"Se revoca la sentencia de la Corte de Circuito de Apelaciones y se resuelve que la demanda ante la Corte de Distrito de Puerto Rico debe quedar desestimada, según fuera resuelto por dicha corte y confirmado por la Corte Suprema de Puerto Rico.

"Así se ordena."

Hemos transcrito íntegra la opinión tanto porque entendemos que resuelve de modo terminante el punto aquí en

controversia, cuanto porque constituyendo como constituye la última y más autorizada interpretación de preceptos de ley que se aplican constantemente, debe ser conocida en toda su extensión.

Yendo al fondo de la cuestión fundamental allí envuelta, que era la de la condición precedente del pago bajo protesta para poder recurrir a las cortes, incidentalmente pero de una manera clara la Corte Suprema nacional resolvió que cuando el pago es voluntario no sólo no cabe recurrir para ante las cortes, si que tampoco para ante la Junta de Revisión e Igualamiento. Repitamos lo que concretamente dijo a ese efecto. Es así:

"Además, cuatro distintas secciones de la ley de 1925 (57, 60, 62 y 76A) constituyen un procedimiento estatutario bajo el cual un contribuyente que pague bajo protesta tiene derecho a demandar en corte el reintegro. Tal contribuyente puede demandar al amparo de la ley bajo estas secciones únicamente si su reintegro ha sido denegado por ambos el Tesorero y la Junta de Revisión e Igualamiento de la Isla. Pero en ninguna parte de estas secciones expresamente se autoriza una apelación de la decisión del Tesorero para ante la Junta por uno que haya pagado las contribuciones sin protesta. Y la sección 76B, que de acuerdo con la interpretación de la Corte de Circuito de Apelaciones autoriza el pleito por un contribuyente que haya pagado voluntariamente, expresamente prohibe el pleito 'hasta que debidamente se haya presentado al Tesorero y *en apelación* ante la Junta de Revisión e Igualamiento una reclamación de reintegro o crédito, según lo establecido por la ley en ese sentido y por los reglamentos dictados de acuerdo con dicha ley.' (Itálicas nuestras.) Como a un contribuyente voluntario no le ha sido concedido derecho expreso alguno de apelación del Tesorero a la Junta 'según lo establecido por la ley' en relación con dichas apelaciones, no tiene autorización expresa para cumplir con la condición previa al derecho al pleito bajo la sección 76B. Los derechos negados por ley no pueden ser concedidos por un reglamento."

No es pues que la ley no fije la extensión del término para apelar ante la junta de la resolución del Tesorero, cuando éste se niega a devolver una contribución sobre ingresos pagada voluntariamente; es que no concede tal apelación. Y

siendo como es ello así, cae por su base la contención de la peticionaria, debiendo, en su consecuencia, declararse *no haber lugar a expedir el mandamus que solicita.*